## Moidel, Appellant, *v.* Peoples Natural Gas Company.

214

Argued April 21, 1959. Before BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*E. V. Buckley*, with him *Maurice L. Kessler*, and *Mercer & Buckley*, for plaintiffs, appellants.

*H. E. McCamey*, with him *Milton W. Lamproplos*, and *Dickie, McCamey, Chilcote & Robinson*, and *Eckert, Seamans & Cherin*, for defendant, appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, September 28, 1959:

This appeal questions the propriety of the action of the Court of Common Pleas of Allegheny County in its refusal to grant a new trial in this trespass action.

At approximately 8:00 p.m., March 1, 1951, an explosion—the incident which gave rise to this litigation—occurred in a one-story building located at 3700 Liberty Avenue, Pittsburgh, a building rented and occupied by Meyer Moidel, Selma Moidel and Zachary Caplan, a partnership, doing business under the name of Joseph Moidel (herein called Moidel). Liberty Avenue runs generally east and west and is intersected by 37th Street which runs generally north and south.

In actuality, 37th Street ends in a "T" intersection at Liberty Avenue but 37th Street *as laid out on the city maps* crosses Liberty Avenue and extends southwardly to a street (*which also exists only on city maps*) known as Sassafras Street. From the point where, theoretically, 37th Street runs south of Liberty Avenue the terrain is level for a distance of approximately 60 feet; at that point it drops down abruptly—at approximately a 45° angle—for a distance of 125 feet to Sassafras Street.

East of the point of the theoretical intersection of Liberty Avenue and 37th Street was Moidel's rented building extending approximately 70 feet along the southerly side of Liberty Avenue and in a southerly direction approximately 60 feet to the brow of the hill. At the time in question Moidel conducted a wholesale auto accessory business in this building.

West of the theoretical street intersection—approximately 150 feet from Moidel's business place—was a private dwelling occupied by one Alec Walkowski, his family and a Miss Baldwin.

On the afternoon of March 1, 1951, Moidel, whose building was serviced by the Equitable Gas Company (herein called Equitable), detected the odor of gas fumes in its place of business and reported this condition to Equitable. Shortly thereafter an Equitable employee visited Moidel's business place, discovered a cracked casing in a heating stove and turned off the stove. The Equitable employee made no check of the Equitable gas service lines leading into or through the Moidel building. At the close of the business day Moidel closed the store leaving two pilot lights on two unit heaters burning in the customary manner.

On the evening of March 1, 1951 an explosion occurred in the basement of the Walkowski home causing a fire therein and injuring several persons including

216

one Helen Baldwin. Within a very short time—perhaps a minute[1]—an explosion occurred in the Moidel place of business causing a fire; as a result of the explosion and fire Moidel's place of business was leveled to the ground.

It is undisputed that explosions took place in both Moidel's place of business and the Walkowski home, that the explosion in the former followed that in the latter, and, while the explosions were not simultaneous, a very short period of time elapsed between them.

While the fire raged in the Moidel building another fire broke out at a point in the rear of the Moidel building and approximately half way down the hillside between Liberty Avenue and Sassafras Street. The testimony clearly indicates that this fire was a gas flame which shot out of the ground, extended 15 to 20 feet in the air and continued to burn for several hours until the Peoples' gas line in that area was turned off.

While Peoples Gas Company (herein called Peoples) did not service either the Moidel building nor the Walkowski home, it did own and maintain a 6-inch gas supply line which extended from Liberty Avenue beneath the unopened portion of 37th Street in a southerly direction to the brow of the hill and thence downward to Sassafras Street. The parties stipulated that this particular gas line had been installed in 1904 by another gas company and had been acquired by Peoples in 1914 or 1915 and that the gas which caused flames

[1] A Mrs. Ferguson, a passenger in an automobile with her husband, testified that she and her husband were proceeding easterly along Liberty Avenue; as their automobile passed the Walkowski home an explosion occurred showering the Ferguson car with broken glass; her husband stopped the car at a point near the Moidel place of business to inspect the damage to the car; that her husband got out of the car, walked in front thereof, and had started back to the automobile when the explosion occurred in Moidel's place of business.

to shoot into the air part way down the hillside immediately after the Moidel explosion was gas which came from this gas supply line of Peoples.

On April 26, 1951 Peoples' employees dug a trench along its 6-inch gas line southward from Liberty Avenue. At a point approximately 87 feet below the crest of the hill this 6-inch gas line—which had been carrying gas under approximately 35 pound pressure—was found to be completely parted, the separation having occurred at what had been a coupling. At this point was a collar leak clamp which clamp was at the joint on the gas pipe when Peoples acquired the line.

At the time of trial two lawsuits were consolidated, one wherein Helen Baldwin, an occupant of the Walkowski home, was the plaintiff and Peoples the defendant, and the other in which Moidel was the plaintiff and Peoples the defendant. In the former lawsuit the jury returned a verdict in favor of Helen Baldwin and against Peoples. In the Moidel lawsuit the jury first returned to the courtroom with a verdict[2] in the following form: ". . . we, the Jurors, . . . find Peoples Natural Gas Company, sole defendant, guilty of negligence under circumstantial evidence with no liability to [Moidel]". The court then instructed the jury that it would have to find a verdict either for Moidel or for Peoples. The jurors then retired and returned a verdict, then recorded, which read as follows: ". . . we, the Jurors, . . . find . . . Peoples Natural Gas Company not guilty. Verdict—favor of defendant Peoples Natural Gas Company . . ." Moidel's application for a new trial was refused by the court below, judgment was entered upon the verdict in favor of Peoples and this appeal was taken.

Moidel contends that the court below abused its discretion in refusing to grant a new trial in: (1) that

---

[2] This verdict was not recorded.

the verdict was against the law and the evidence; (2) that the court committed a fundamental error in failing to instruct the jury on the law of subrogation and (3) that the verdicts in the Baldwin and Moidel lawsuits were inconsistent. Peoples, on the other hand, urges that, since a judgment n.o.v. should have been entered in its favor, any alleged trial errors are immaterial. It contends that, since the record reveals it had no notice prior to the explosion that the joint in the pipe line was defective, it could not be held negligent in failing to discover or repair such defect. In support of this proposition, Peoples argues that a gas company is under no obligation to continually inspect its lines without reference to the existence or non-existence of gas leaks, but that its duty is only to maintain an adequate system of inspection to reasonably detect any gas leaks that might occur.

Accepting, *arguendo,* Peoples' statement of the law as correct, we nevertheless believe that there was sufficient evidence upon this record to warrant a determination by the jury that Peoples was negligent. In *Koelsch v. The Philadelphia Co.,* 152 Pa. 355, 362, 363, 25 A. 522, the duty of a gas company in transporting such a dangerous substance was aptly set forth: "The definitions of negligence which have been attempted imply that a higher degree of care and vigilance is required in dealing with a dangerous agency than in the ordinary affairs of life or business, which involve little or no risk of injury to persons or property. While no absolute standard of duty in dealing with such agencies can be prescribed, it is safe to say in general terms that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken. This would require in the case of a gas company not only that its pipes and fittings should be of such material and workmanship, and laid in the

ground with such skill and care, as to provide against the escape of gas therefrom when new, *but that such system of inspection should be maintained as would insure reasonable promptness in the detection of all leaks that might occur from the deterioration of the material of the pipes, or from any other cause within the circumspection of men of ordinary skill in the business* . . . The escape of gas from the defendant's main was, in the absence of any exculpatory explanation, some evidence of neglect . . . and when to this was added the testimony . . . of one of the plaintiff's witnesses in respect to the appearance of the aperture through which it escaped, a prima facie case was made out against the defendant. The jury would have been justified in finding either that the pipe was defective when put in place or *that it had been in use so long that the defendant ought to have known that it was unsafe to use it longer, if no explanation of its condition, actual or apparent, had been given."* (Emphasis supplied)

Moidel introduced testimony which, if believed by the jury, would establish that, upon unearthing Peoples' 6-inch main gas line, a separation at one of the joints of the line approximately half-way down the hill was discovered. The lower end of the gas pipe was 6½″ below and 4″ to the west of the upper end of the pipe. A laboratory examination of the two ends of the pipe at this separated joint disclosed that only two or three of the threads were properly engaged rather than all twelve threads and that the threaded end of the pipe was improperly constructed in that it did not properly fit into the other end. Moidel offered further testimony to the effect that a collar leak clamp had been placed over this joint, its purpose being to prevent the escape of gas from an imperfect or defective joint. Evidence was also introduced that the soil be-

tween the broken joint in the gas line and Moidel's building was loose, porous and of such character as to permit gas moving upward to enter the building. Under this evidence, the jury properly could have found that this joint in Peoples' main line was defective when initially laid and eventually permitted gas to escape which travelled through the porous soil to Moidel's building resulting in the explosion.

Nor can Peoples escape liability on the theory that, since it purchased the line from another company, it was unaware of the defective joint, and thus had no actual or constructive notice. A company, such as Peoples, dealing in a dangerous substance, may not take over the defective equipment of a predecessor and escape blame for subsequent injury to a third party. The fundamental question—properly left to the jury—is whether or not Peoples could have discovered the defective joint by a reasonable inspection prior to or after its acquisition of the line.

Peoples also argues that since Moidel's case rests entirely upon circumstantial evidence, Moidel had the burden of proving that *the only reasonable inference from that evidence* is that the accident was caused by Peoples' negligence. This is not a correct statement of the law. Unfortunately, Peoples at the time of oral argument did not have the benefit of our decision in *Smith v. Bell Telephone Co. of Pennsylvania,* 397 Pa. 134, 153 A. 2d 477. Mr. Justice McBRIDE speaking for the Court clearly stated the law applicable in cases where circumstantial evidence is relied upon to establish negligence. "The formula that 'the circumstances must be so strong as to preclude the possibility of injury in any other way and provide as the only reasonable inference the conclusion plaintiff advances' is not a correct statement of the rule ... If that were the rule what would be the province of the jury? In no case

where there was more than one reasonable inference would the jury be permitted to decide . . . We have said many times that the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion may be based. [Citing cases] Clearly this does not mean that the jury may not draw inferences based upon all the evidence and the jurors' own knowledge and experience, for that is, of course, the very heart of the jury's function. It means only that the evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff and not that that conclusion must be the *only* one which logically can be reached . . . It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability . . . Therefore, when a party who has the burden of proof relies upon circumstantial evidence and inferences reasonably deducible therefrom, such evidence, in order to prevail, must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the factfinder any other evidence and reasonable inferences therefrom which are inconsistent therewith." We are satisfied that Moidel's evidence satisfies this requirement.

We must now examine Moidel's contention that the trial court committed fundamental error in failing to charge on the law of subrogation. This question arises because of the introduction of Moidel's income tax return by Peoples in an attempt to show that a loss had not been claimed by Moidel for the destruction of the building. The income tax return further showed that

Moidel had received $100,000 as an insurance settlement for the loss of the building. Moidel argues that the jury's initial verdict reveals that the jury mistakenly believed that Moidel would receive a double recovery if the verdict was returned in its favor. Clearly, the fact that an injured party has received compensation from a source other than the wrongdoer is without relevancy in a suit brought by the injured party against the wrongdoer to recover damages. It was error to permit such evidence to be introduced in the trial of this case. *Littman v. Bell Telephone Co.*, 315 Pa. 370, 381, 172 A. 687; *Lengle v. North Lebanon Township*, 274 Pa. 51, 117 A. 403; *Ridgeway v. Sayre Electric Co.*, 258 Pa. 400, 407, 102 A. 123; *Stahler v. Philadelphia & Reading RR.*, 199 Pa. 383, 49 A. 273; *Magaw v. Lambert*, 3 Pa. 444; *Lindsay v. Bridgewater Gas Co.*, 3 Pa. Dist. Rep. 716; Note, 81 A.L.R. 320. However, Moidel offered no objection to the introduction of this evidence, nor did he request the court below to charge the jury on the subject, nor did he object to the charge of the court below when it failed to charge on the issue Moidel now urges as fundamental error. Ordinarily Moidel would be precluded from even raising such an issue on appeal. However, where as here, it is apparent that the jury based its verdict upon this inadmissible evidence, we believe that it is encumbent upon us to grant a new trial in the interests of justice. The jury in its initial verdict found that Peoples was guilty of negligence, but that Moidel was not entitled to any damages. The only plausible explanation for such verdict is that the jury either believed that Moidel would recover more than it was entitled to, or that it found that Moidel was contributorily negligent. There is no evidence, however, to support the latter proposition. Although there was testimony that Moidel notified the Equitable, its supplier,

of the smell of gas on the premises, it was clearly established that it was an odor of fumes, not of raw or unburned gas, and that its cause was a defective heating appliance in Moidel's office. Under such circumstances, the jury was undoubtedly misled by the introduction of Moidel's income tax records, and a new trial must be granted.

Judgment reversed and a new trial granted.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

Mr. Justice BELL dissents.