464 A.2d 440

**BEECHWOODS FLYING SERVICE INC., a corporation, and Hepburnia Coal Sales Corporation, a corporation, Appellants,**

**v.**

**AL HAMILTON CONTRACTING CORPORATION, a corporation, and Larry Wilsoncroft, an individual.**

Superior Court of Pennsylvania.

Argued Nov. 9, 1982.

Filed Aug. 5, 1983.

Petition for Allowance of Appeal Granted Dec. 5, 1983.

William A. Pietragallo, Pittsburgh, for appellants.

William C. Kriner, Clearfield, for Hamilton, appellee.

Richard A. Bell, Clearfield, for Wilsoncroft, appellee.

Before CAVANAUGH, ROWLEY and MONTGOMERY, JJ.

ROWLEY, Judge:

This is an appeal from an order denying appellants' post-trial motions for judgment n.o.v. or a new trial.

On September 28, 1977, a helicopter, owned by Hepburnia Coal Sales Corporation (Hepburnia) and leased to its subsidiary, Beechwoods Flying Service, Inc. (Beechwoods), [hereinafter appellants], and a truck operated by Appellee Larry Wilsoncroft (Wilsoncroft), an employee of Al Hamilton Contracting Corporation (Hamilton), collided. The helicopter had been leased by Hamilton from Beechwoods. Included in the fallout from the September 28, 1977 collision was the law suit that forms the foundation for this appeal.

In their suit against Hamilton and Wilsoncroft, the appellants sought to recover the cost of repairs, as well as damages for the loss of use and the diminution in market

value of the damaged helicopter. The repairs took six months to complete and it was stipulated that their cost was $85,000.00. Trial was held before the court and a jury, which returned a verdict finding Hamilton negligent and awarding appellants damages in the amount of $12,076.00 for "down time," i.e., loss of use. No damages were awarded for the cost of repairs or for the diminution in market value. Wilsoncroft was adjudged not to be negligent. Appellants' subsequent motion for a new trial or judgment n.o.v. was denied. This appeal followed. We affirm.

On appeal, the issues, as stated by appellants, are:

1. Is the bailor entitled to a directed verdict or judgment n.o.v. where the evidence has established the existence of a bailment agreement, delivery of the bailed property in good condition, return of the bailed property in a damaged condition and the bailee offered no evidence to show exercise of reasonable care for the bailed property?

2. Are appellants entitled to a new trial because the trial court's instructions to the jury were inadequate, incorrect and inconsistent with Pennsylvania law on bailment?

3. Are appellants entitled to a new trial because the trial court admitted evidence concerning insurance coverage and payment of the appellants' damages by its insurer?

4. Are appellants entitled to a new trial because the trial court failed to instruct the jury as to the law of negligence as applied to one appellee and the imputation of negligence from one appellee to another?

5. Are appellants entitled to a new trial where the trial court failed to reinstruct the jury so that the jury might correct its unclear and improper verdict or to set aside the verdict?

We note initially that our scope of review on appeal is limited. A judgment n.o.v. is an extreme remedy and

should be entered only in a clear case after the evidence has been evaluated in a light most favorable to the verdict winner. *Ditz v. Marshall*, 259 Pa.Super. 31, 393 A.2d 701 (1978). Likewise, the decision to grant or deny a motion for a new trial is within the discretion of the trial judge and should be reviewed on appeal only for an abuse of discretion. *Myers v. Gold*, 277 Pa.Super. 66, 419 A.2d 663 (1980), *Macina v. McAdams*, 280 Pa.Super. 115, 421 A.2d 432 (1980). It is with these standards in mind, therefore, that appellants' allegations of error are considered.

## I

■ The principle allegation of error raised by appellants is that the trial court erred in allowing evidence concerning insurance coverage on the damaged helicopter to be introduced at trial, including the fact that the stipulated property damages of $85,000.00 had been paid to Beechwoods by its insurance carrier.[1] The general rule in Pennsylvania is that reference to insurance coverage held by one of the parties to an action will be excluded where such reference would be irrelevant and prejudicial. *Price v. Yellow Cab Company*, 443 Pa. 56, 278 A.2d 161 (1971); *Moidel v. Peoples Natural Gas Company*, 397 Pa. 212, 154 A.2d 399 (1959). However, where evidence of insurance coverage is relevant to the issues in the case, it will not be barred even though its introduction might be prejudicial. *Moidel, supra; Copozi v. Hearst Publishing Company, Inc.*, 371 Pa. 503, 92 A.2d 177 (1952); *Jury v. New York Central Railroad Company*, 167 Pa.Super. 244, 74 A.2d 531 (1950). *See also McGowan v. Devonshire Hall Apartments*, 278 Pa.Super. 229, 420 A.2d 514 (1980). The question in the case at hand, therefore, is whether the evidence of appellants'

---

1. It was conceded by all parties that, in reality, this was primarily a subrogation action by appellants' insurance company. Under Pa.R.C.P. 2002(d), insurance companies can bring suit in the name of their insured where their interest is that of a subrogee. However, under Pa.R.C.P. 2003, any defense which could be raised against the subrogor can also be raised against subrogee.

insurance coverage permitted by the trial court was relevant to the issues raised.

■■■ It is clear that the relationship between the appellants and Appellee Hamilton was that of bailor-bailee.

> A "bailment" in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it. 8 Am.Jur.2d § 2, Bailments.

Bailments can be structured for the sole benefit of either the bailor or bailee, or for the mutual benefit of both. A cause of action premised on a bailment relationship may be brought in trespass, assumpsit or replevin. In this case, the bailment was asserted to be mutual and the complaint by appellants was filed in both assumpsit and trespass. In the third edition of *Brown on Personal Property*, the following observations concerning mutual bailments are found:

> Where the bailment transaction is mutually beneficial to both parties, it is well settled that the bailee is required to use ordinary diligence in protecting the subject matter of the bailment from damage or loss. Ordinary diligence in this type of bailment has been defined as that care which men of ordinary prudence customarily take of their own goods of a similar kind and under similar circumstances.
>
>     *    \*    \*    \*    \*    \*
>
> The bailee for hire is not, however, an insurer of the goods and will not be held liable for their loss or damage unless he is guilty of some negligent act or omission which is the proximate cause of their loss.
>
>     \*    \*    \*    \*    \*    \*
>
> Although the law ordinarily fixes the particular standard of care which the bailee is required to exercise concerning

the bailed goods, *it is well settled that the parties may agree among themselves, by any contract which is not contrary to public policy, as to the extent of the bailee's liability. Such contracts may impose either a lesser or a greater responsibility on the depositary than the law ordinarily implies.* (Emphasis added.)

R. BROWN, THE LAW OF PERSONAL PROPERTY 258, 259, 270 (3d ed. 1975) (footnotes omitted).

It was Hamilton's position throughout the proceedings in this case that, *as part of the contractual arrangement between the parties,* the risk of loss for the damaged helicopter lay with appellants. In its answer and new matter filed in response to appellants' complaint,[2] Hamilton contended that the helicopter which was damaged on September 28, 1977, was a "loaner" or substitute helicopter which Hamilton had obtained from Beechwoods to temporarily replace a helicopter which Hamilton leased on a monthly basis from Beechwoods pursuant to a written agreement.[3] Hamilton averred that the damaged aircraft, as a "loaner" or substitute helicopter, was subject to the same insurance coverage and protection contained in the written agreement for the original aircraft. Thus, the terms of the written lease agreement for the original heli-

2. Initially, Hamilton filed preliminary objections to appellants' complaint alleging lack of capacity to sue and misjoinder of a party on the theory that Hamilton was appellants' "insured," and, as such, could not be sued by them for subrogation. Hamilton's preliminary objections were dismissed by the trial court based on the record as it then stood. Hamilton in turn filed an answer to appellants' complaint denying its responsibility and raising as new matter the question of insurance coverage.

3. Hamilton had returned the original helicopter to Beechwoods for a routine service and maintenance check in compliance with the terms of the written contract between the parties. The rental fee on the damaged helicopter (the "loaner") was one hundred and sixty dollars ($160.00) per hour, fuel included. This rental fee was agreed to orally by authorized agents of the parties. The rental fee for the helicopter subject to the written agreement was three thousand five hundred fifty dollars ($3,550.00) per month, plus seventy dollars ($70.00) per hour of use, no fuel included.

copter, as they related to insurance coverage on the original helicopter, were made relevant by virtue of the pleadings.[4]

At trial, Hamilton argued that although the original written lease agreement between the parties did not *specifically* provide for a replacement helicopter, it did so *impliedly*. Consequently, Hamilton asserted, the damaged replacement helicopter was protected by the same insurance provisions found in the agreement between the parties concerning the original helicopter. The argument continued that, appellants, being in effect appellees' insurers, were foreclosed from suing Hamilton for the loss. Hamilton also argued, in the alternative, that even if a separate lease agreement was entered into for the replacement helicopter, and even if it was *not* covered by the insurance coverage found in the written lease agreement on the original helicopter, Hamilton was justified in assuming, based on its past business dealings with appellants, that encompassed in the hourly rental rate for the damaged helicopter was a charge for insurance coverage on the replacement helicopter that would be provided by appellants for appellees, just as it was on the original helicopter. As a result, Hamilton asserted that appellants had assumed the risk of loss, not only on the original helicopter, but on the damaged helicopter as well. Therefore, Hamilton argued, it was not liable for the cost of repairs to the damaged helicopter.

■ Appellants, on the other hand, contended that the damaged helicopter was leased pursuant to an oral agreement which was separate and distinct from the written lease between the parties, and that Hamilton had no right to expect that appellants would provide insurance coverage for the damaged aircraft. They argued that the risk of loss was not shifted from Hamilton to them, and that Hamilton

4. In the original lease agreement, it was provided that the responsibility for insurance protection covering the original helicopter lay with Hamilton. However, the evidence disclosed that it was also agreed between the parties that Hamilton would "purchase" the required insurance protection for the original helicopter through Beechwoods; i.e., Beechwoods, for a premium paid to it by Hamilton, would cause Hamilton to be included as a named insured under Beechwood's blanket insurance policy on its fleet of helicopters.

was, consequently, liable for the cost of repairs. Thus, a clear issue was raised by the parties as to whether or not the agreement of bailment between them for the damaged helicopter contained any provisions limiting or modifying the bailee's (Hamilton's) liability for damage to the same. It was within this context, therefore, that the trial court permitted evidence concerning insurance and insurance coverage to be elicited.

In this context such evidence was relevant to the issue raised and no error was occasioned by its admission. Unlike *Boudwin v. Yellow Cab Co.*, 410 Pa. 31, 188 A.2d 259 (1963), *Lobalzo v. Varoli*, 409 Pa. 15, 185 A.2d 557 (1962), and *Moidel v. Peoples Natural Gas Company*, 397 Pa. 212, 154 A.2d 399 (1959), the three cases cited by appellants in their brief to support their argument that evidence of insurance coverage is inadmissible, the cause of action between the parties did not arise out of a bailment or some other contractual relationship. While we agree that the fact that an injured party has received compensation from a source other than the alleged wrongdoer may very well have no relevancy in an action premised solely on negligence, *see Moidel, supra,* the same prohibition is not applicable where, as here, a contractual relationship is averred, and provisions modifying the normal bailor-bailee relationship with respect to insurance coverage are asserted to have been included therein.

For these reasons, we find appellants' argument to be without merit.

## II

Appellants also argue that they were entitled to a directed verdict or judgment n.o.v. in the amount of $97,076.00. Appellants make this argument on the ground that once they had established all the elements of a bailment, the court was "compelled" to award them the stipulated repair costs of $85,000.00, as well as the $12,076.00 designated by the jury for "down time." We do not agree.

■ The existence of a bailment in this case only affected the burden of proof on the issue of liability. Because bailments are contractual relationships,[5] the amount of damages owed, if any, depends, as we have seen, upon the terms of the bailment. In this case, while it is true that appellees agreed that it cost $85,000.00 to repair the damaged helicopter, they never agreed that they were responsible for the payment of the repair bill. As noted above, appellees argued instead that, under the terms of the agreement struck between the parties, the risk of loss for physical damage to the helicopter had been assumed by appellants and, therefore, the cost of repair lay with them. The jury in returning its verdict obviously agreed with appellees and awarded appellants damages which encompassed only the loss of use of the helicopter. A directed verdict on the issue of liability would not have guaranteed a greater award. Likewise, the mere fact that the award given is lower than the successful party anticipated is not a ground on which to base a judgment n.o.v.

■ Appellants next claim of error is that the trial court failed "to instruct the jury on the basic legal principles involved in the case," particularly with respect to the law of bailment. Having made that assertion, however, appellants fail to indicate with any specificity in what manner the trial court failed in its duty to advise the jury on the legal provisions applicable to the case, or in what fashion the trial court's explanation of the law of bailment could have been clearer. Appellants even concede that all the points for charge on bailment submitted by their counsel were included in the court's instructions. Consequently, lacking any specific allegations of error to explore, and after carefully

5. "[I]n the absence of an express provision to the contrary, every contract of hiring contains an implied covenant that the bailee will take reasonable care of the property hired, and, in the event that the property is injured due to the bailee's negligence, an action will lie for the breach of such implied covenant, and, regardless of whether such action is in assumpsit or trespass, it is still founded in contract." 5 P.L.E. § 28 Bailment.

reviewing the trial court's charge, we find appellants' second argument to be without merit.

■ Appellants further argue that the trial court failed to charge the jury on the law of imputed negligence. Specifically, appellants contend that the trial court did not instruct the jury as to the potential liability of Hamilton, as a principal, for any negligence attributed to Wilsoncroft, its employee. If the jury had found *Wilsoncroft* guilty of negligence, but not Hamilton, then an argument could be made that a failure to adequately charge on the law of imputed negligence was harmful. However, here, the jury determined that Hamilton was negligent. Consequently, even if appellant was correct that the trial court could have given a more in-depth instruction on the law of imputed negligence, the error would be harmless.[6]

■ Appellants' final argument is that the trial court failed to reinstruct the jury so that it might correct an allegedly unclear and improper verdict. In particular, appellants contend that the jury's findings regarding the amount of damages and the existence of two contracts were logically inconsistent, and that, if the jury actually believed. the damaged helicopter to be subject to a separate contract, it could not have intended the $85,000.00 stipulated property damages to be excluded from the final award.

The precise verdict rendered by the jury was as follows: And now to wit: April 7, 1981, we, the Jurors empanelled in the above entitled case, find A Verdict in Favor Larry Wilsoncroft—not guilty of negligence

6. The helicopter was being operated by an agent of Hamilton. The pilot landed it at a construction site where it was struck by the truck operated by Wilsoncroft. Included in appellants' theory of the case, in addition to a claim of imputed negligence, was the allegation that Hamilton was solely liable either because its pilot landed the aircraft at an unsuitable location, or because Hamilton failed to post signs advising vehicular traffic that a helicopter was in the vicinity. The jury's determination that Hamilton alone was negligent could have been based on either one of these suppositions.

Al Hamilton Co.—is guilty of negligence
down time est. $12,076.00
2—contract (separate) on helicopters

During his charge, the trial judge instructed the jury that there were three possible verdicts they could return if they determined Hamilton was negligent. The first option given the jury was to find that the damaged replacement helicopter was covered by the insurance protection provided for the original helicopter under the contract between the parties. The second option given the jury was to find that, while the damaged helicopter was not covered by the original contract, it was covered by a separate oral contract which included insurance provisions that placed the risk of loss on appellants. The third option given the jury was to find that, while the damaged helicopter was subject to a separate oral contract, it was not one which included any insurance provisions and thus placed the risk of loss on Hamilton. It is obvious from the jury's verdict that the jury followed the second option.[7]

There is evidence in the record to support such a verdict. Appellants' agent admitted at trial that a portion of the hourly rental charged for the damaged helicopter included a payment for insurance. Under these circumstances, there is nothing unclear or improper in the verdict thus reached. Appellants' final issue is likewise without merit.

Judgment affirmed.

CAVANAUGH, J., concurs in the result.

[7] This fact is reaffirmed by the jurors' responses to the question put to them by the trial judge after their verdict was read. That question was as follows:

THE COURT: Members of the jury, and Mr. Foreman, am I correct in my statement that you are entering a Verdict in favor of the Plaintiffs, Beechwoods and Hepburnia, and against Al Hamilton Contracting Corporation for the sum of twelve thousand and seventy-six dollars, is that the intent of the jury?

Ten of the twelve jurors so polled answered affirmatively.