## Garcia v. Bang

*James H. Thomas*, for plaintiff.
*J. Michael Flanagan*, for defendant.

HERR, *J.*, September 10, 1987—Presently before the court en banc is plaintiffs' post-trial motion seeking a judgment notwithstanding the verdict or, in the alternative, the granting of a new trial.

Plaintiffs filed a complaint in trespass against defendant on June 28, 1984, alleging loss of earnings and earning power, pain and suffering, mental and emotional shock, loss of consortium and property damage arising out of an automobile accident which occurred January 27, 1984. Defendant filed a counterclaim against plaintiffs, alleging that plaintiff Nereida Garcia was responsible for the property damage he suffered in the January 27, 1984 accident.

A trial was held March 31-April 2, 1986, and the jury in a unanimous verdict found that defendant was not negligent. In addition, the jury in a unanimous verdict found that plaintiff Nereida Garcia was 100 percent responsible for defendant's property loss.

Post-trial motions were filed by plaintiffs on April 9, 1986. Briefs having been filed and oral argument having been heard by the court en banc on June 10, 1987, these motions are properly before the court for disposition.

Plaintiffs contend that (1) the court erred in refusing to direct a verdict for plaintiffs and against defendant on the issue of liability and that the jury's

verdict was contrary to the charge of the court; (2) the verdicts of the jury were against the weight of the evidence; (3) the court erred in refusing to permit the investigating state police trooper (Trooper Stief) to testify as to the beginning of an alleged no-passing zone and in allowing the trooper to testify that "no-passing signs did not exist in the vicinity of the accident site; (4) the court erred in excluding the expert testimony of Harold Kulman relating to organic brain damage; (5) the court erred in permitting Dr. Hume, a psychiatrist, to testify with respect to possible psychological ramifications of plaintiff Nereida Garcia's blood sugar levels, as such testimony exceeded the fair scope of Dr. Hume's pretrial report; (6) the court erred in refusing to charge the jury with plaintiffs' suggested points for charge regarding basic law on damages and psychological damages; and (7) the court's reading of certain of defendant's points for charge repeated aspects of the court's general charge and was prejudicial because it unduly emphasized plaintiffs' burden of proof with respect to damages.

We begin by noting that a judgment notwithstanding the verdict should be entered only in a clear case, and any doubts should be resolved in favor of the verdict. *Atkins v. Urban Redevelopment Authority of Pittsburgh*, 489 Pa. 344, 414 A.2d 100 (1980); *Stewart v. Chernicky*, 439 Pa. 43, 266 A.2d 259 (1970). A judgment n.o.v. is an extreme remedy, *Beechwoods Flying Service Inc. v. Al Hamilton Contracting Corporation*, 317 Pa. Super. 513, 464 A.2d 440 (1983), and the court, in considering this motion, must review the evidence, together with all reasonable inferences therefrom, in the light most favorable to the verdict winner. *Miller v. Checker Yellow Cab Company of Bethlehem Inc.*, 465 Pa. 82, 348 A.2d 128 (1975). The Pennsylvania courts have

said that a judgment notwithstanding the verdict may be entered only in a case where no two reasonable minds could fail to agree that the verdict is improper. *Buck v. Scott Township*, 325 Pa. Super. 148, 472 A.2d 691 (1984).

The standards governing the grant of a new trial on the ground that the verdict was against the weight of the evidence were set forth in *Burrell v. Philadelphia Electric Company*, 438 Pa. 286, 288-9, 265 A.2d 516, 517-8 (1970):

"The grant of a new trial is within the sound discretion of the trial judge, who is present at the offering of all relevant testimony, but that discretion is not absolute; this court will review the action of the court below and will reverse if it determines that it acted capriciously or palpably abused its discretion." *Austin v. Ridge*, 435 Pa. 1, 4, 255 A.2d 123, 124 (1969), and cases there cited. "A new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion: (citation omitted). Neither should it ordinarily be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the jury might have found for either party." *Carroll v. Pittsburgh*, 368 Pa. 436, 84 A.2d 505 (1951). A new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Jones v. Williams*, 358 Pa. 559, 58 A.2d 57 (1948); *Carroll v. Pittsburgh, supra*; *Brown v. McLean Trucking Co.*, 434 Pa. 427, 429-30, 256 A.2d 606, 607 (1969).

Our review of the record discloses that the accident which led to this litigation occurred on a dark, cloudy winter evening. Plaintiff Nereida Garcia had turned right out of the Kreider's Dairy parking lot and was proceeding in her black pickup truck north on Pennsylvania Route 72 in the vicinity of the small, red Mennonite church lying just north of Kreider's Dairy. Nereida Garcia's headlights were not turned on. Defendant was traveling south on Route 72 at the same time. At approximately 7:20 p.m.; an accident occurred in the northbound lane of traffic when defendant attempted to pass an automobile proceeding south on Route 72 and in so doing struck the left front of the Garcia vehicle with the left front of his vehicle.

The record discloses that Route 72 is marked by a double yellow line with a speed limit of 55 miles per hour at the point where the accident occurred. Defendant testified that he was aware of the existence of the double yellow line, and that to "save time" he crossed the double yellow line to pass the vehicle in front of them. The latter vehicle was moving at approximately 40 miles per hour.

The occupants (the Millers) of the vehicle defendant was attempting to pass when the accident occurred testified that they were not aware of plaintiffs' black pickup truck until the moment of the accident. Mr. Miller stated that he did not see the Garcia vehicle "until it was almost on top of us." Mrs. Miller testified, "She was right there. I mean, she wasn't like 30 or 40 yards down, she was right beside us practically."

The record reveals (1) that the pavement was mostly dry, (2) that it was dark, and (3) that there were no streetlights, parking lot lights or billboards illuminating the road in the vicinity of the accident. In addition, Trooper Stief testified that a driver in

the southbound lane has fairly good visibility, about two-tenths of a mile, at the location of the accident.

Initially, we will address plaintiffs' contention that it was error not to direct a verdict for plaintiffs on the issue of liability, and the related assertion that the jury's verdict was contrary to the charge of the court. Plaintiffs argue that defendant was negligent per se when he crossed the double yellow line to pass a slower-moving vehicle because this action was in violation of the law. We note that in Pennsylvania an unexplained violation of the Motor Vehicle Code ordinarily constitutes negligence as a matter of law. *Troutman v. Tabb*, 285 Pa. Super. 353, 360, 427 A.2d 673, 677 (1981).

In order to determine whether defendant was in violation of the Vehicle Code[1] when he crossed the double yellow line into the northbound lane of Route 72, we first must review those provisions of the code which may have prohibited his movement across the double yellow line. The relevant statutes are 75 Pa.C.S. §§3306(a), 3307(a) and (b), and 3309(1).

Section 3306(a), entitled "Limitations on driving on left side of roadway," provides that:

"(a) *General rule*—No vehicle shall be driven on the left side of the roadway under any of the following conditions:

"(1) When approaching or upon the crest of a grade or a curve in the highway where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction.

"(2) When approaching within 100 feet of or traversing any intersection or railroad grade crossing,

---

1. Act of June 17, 1976, P.L. 162, 75 Pa C.S. §101 et seq. (Supp. 1987-1988).

unless otherwise indicated by official traffic-control devices.

"(3) When the view is obstructed upon approaching within 100 feet of any bridge, viaduct or tunnel."

Section 3307, entitled "No-passing zones," reads in pertinent part as follows:

"(a) *Establishment and marking*—The department and local authorities may determine those portions of any highway under their respective jurisdictions where overtaking and passing or driving on the left side of the roadway would be especially hazardous and shall by appropriate signs or markings on the roadway indicate the beginning and end of such zones and when the signs or markings are in place and clearly visible to an ordinarily observant person every driver of a vehicle shall obey the directions of the signs or markings. Signs shall be placed to indicate the beginning and end of each no-passing zone."

"(b) *Compliance by drivers*—Where signs and markings are in place to define a no-passing zone as set forth in subsection (a), no driver shall at any time drive on the left side of the roadway within the no-passing zone or on the left side of any pavement striping designed to mark a no-passing zone throughout its length."

Section 3309, entitled "Driving on roadways laned for traffic," provides in subsection (1) that:

"Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

"(1) *Driving within single lane*—A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety."

Plaintiffs contend that defendant was negligent per se because sections 3307(a) and (b) both prohibit the crossing of a double yellow line for the purpose of passing. At the outset, we note that the sole Pennsylvania court to construe section 3307 held that this statute does not prohibit passing in a no-passing zone unless there are markings on the highway *and* signs placed to indicate the beginning and end of each no-passing zone. In *Commonwealth v. Yorty*, 11 D. & C. 3d 206, 207 (1979), the court stated that "passing in a 'no-passing zone' is a violation only when both 'signs *and* highway markings are in place.' "

The record does not disclose whether signs are located at the beginning and end of the no-passing zone where the accident occurred. Plaintiffs now claim that the trial court erred in refusing to permit Trooper Stief to testify as to the beginning of the no-passing zone.[2] However, the record does not support this contention. The court merely sustained a defense objection to the trooper's conclusion concerning where passing is allowed in the northbound lane of Route 72. Plaintiffs' counsel did not object to this ruling and asked no further questions of Trooper Stief. We emphasize that the officer was not asked, and did not attempt to testify, about whether no-passing signs are located at the beginning and end of the no-passing zone in question.

---

2. The exchange upon which the plaintiffs rely in support of this assertion reads as follows:

(By Mr. Thomas)

Q. Do you know, sir, going north from where the accident happened, going toward Manheim—

A. Yes.

Q. —do you know what the lines are that control traffic in the road going north to the square where Mr. Bang said he got on to Route 72?

At oral argument before the court en banc, counsel for plaintiffs contended that crossing a double yellow line in a no-passing zone not marked at the beginning and end by signs is a violation of section 3307(a) even if it is not a violation of section 3307(b), because section 3307(a) contains language which seems to apply to drivers in no-passing zones.[3] Under counsel's interpretation, if the no-passing zone is marked by signs, the driver has violated section 3307(b), is negligent per se and may be prosecuted. On the other hand, if the no-passing zone is not marked by signs, a driver who crosses a double yellow line and is involved in an accident, while immune from prosecution, nevertheless has violated section 3307(a) and is negligent per se. Thus, counsel distinguishes subsection (b) of section 3307 on the ground that it provides for prosecution whereas subsection (a) does not.

We disagree with plaintiffs' interpretation of the statute, since the construction given section 3307 by the *Yorty* court is supported by the Statutory Construction Act of 1972.[4] First, the heading of section 3307(a) is entitled "Establishment and mark-

---

A.    Yes. Except for intersections where the roadway is clear, there is a double yellow line all the way through north.

Q.    How about going north from the intersection where Mr. Bang got on Route 72, going north out of Manheim?

A.    There is also a double yellow line until about two miles north, up near Oak Tree Road, then passing is allowed.

Mr. Flanagan: Your Honor, I am going to have to object to that. That is a conclusion. It's an improper conclusion, as well.

The Court: Yes, I will strike that from the record.

3. Section 3307(a) provides in part that "[w]hen the signs or markings are in place and clearly visible to an ordinarily observant person every driver of a vehicle shall obey the directions of the signs or markings." 75 Pa. C.S. §3307(a).

4. Act of December 6, 1972, P.L. 1339, 1 Pa. C.S. §§1501-1991 (Supp. 1987-1988).

ing," and this paragraph of the statute sets forth the authority of the Pennsylvania Department of Transportation and local authorities to determine which portions of highways within their respective jurisdictions will be no-passing zones. Although there is language in section 3307(a) which appears to govern the actions of drivers,[5] this section when read as a whole clearly is the part of the statute which contains the authority and responsibilities of the department and local authorities in establishing and marking no-passing zones. Section 3307(b) is entitled "Compliance by drivers" and in our view is the provision which governs the actions of drivers in no-passing zones. This position is supported by 1 Pa.C.S. §1924 which states, in part, that "[t]he headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof." See *In re B.E.*, 474 Pa. 139, 144, 377 A.2d 153, 155 (1977): "Headings to articles may be used to aid in the construction of statutes."

If the provision of section 3307(a) noted previously *is* deemed to apply to drivers, then subsections (a) and (b) of the statute are irreconcilable because 75 Pa.C.S. §3307(a) provides that when signs *or* markings are in place, every driver shall obey the directions of the signs *or* markings whereas 75 Pa.C.S. §3307(b) unequivocally states that it is only when signs *and* markings are in place that driving on the left side of the roadway is prohibited. Whenever clauses in the same statute are irreconcilable, the Statutory Contruction Act dictates that "the clause last in order of date or position shall prevail."

---

5. See footnote 3, *supra*.

1 Pa.C.S §1934. Consequently, the interpretation given section 3307 by the *Yorty* court, that passing in a no-passing zone is a violation only when both signs and highway markings are in place, would accord with this rule of statutory construction.

As we have noted, the record does not disclose the existence of signs at the beginning and end of the no-passing zone at issue in this case. Accordingly, we cannot hold that defendant was negligent as a matter of law on the basis of a violation of 75 Pa.C.S §3307.

Section 3306 states that a vehicle shall not be driven on the left side of the roadway when (1) approaching a grade or curve where the view is obstructed so as to create a hazard in the event a vehicle would approach from the opposite direction, (2) approaching within 100 feet of or traversing an intersection or railroad crossing, or (3) the view is obstructed by a bridge or tunnel. Our review of the record discloses that none of these conditions exist at or near the point where the defendant crossed the double yellow line. Therefore, defendant cannot be said to have been negligent per se for having violated 75 Pa.C.S. §3306.

Plaintiffs also contend defendant was negligent as a matter of law because his crossing of the double yellow line was prohibited by section 3309(a)(1) of the Vehicle Code, which requires that a driver stay entirely within a single lane and not move from that lane until first ascertaining that the movement can be made with safety. The record before us does not support this contention. We note, in particular, that Mr. and Mrs. Miller both testified that they did not see the Garcia vehicle until a moment before the accident.

We conclude, based upon our thorough review of the record, that plaintiffs failed to prove a violation

of the Vehicle Code by defendant. Thus, we hold that the trial court properly refused to direct a verdict for plaintiffs on the issue of liability. Having found that defendant was not negligent as a matter of law, we also dismiss plaintiffs' assertion that the jury's verdict was contrary to the charge of the court.

We next address plaintiffs' contention that the verdicts of the jury were against the weight of the evidence. We emphasize that it is not proper to grant a new trial merely because the trial judge on the same facts would have arrived at a different conclusion. It is "only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice" that a new trial should be granted. *Burrell v. Philadelphia Electric Company, supra.*

The record discloses that (1) defendant was proceeding southbound on Route 72 and moved across a double yellow line to pass a vehicle going about 40 miles per hour in a 55 mile per hour zone; (2) that no-passing signs were not posted in the vicinity of the church where the accident occurred;[6] and (3) that defendant had "fairly good visibility" southbound when he began to pass the vehicle in front of him. The record also reveals that the evening in question was dark, that the road in the vicinity of the accident was not illuminated by any type of lighting, and that the pavement was dry in most part. Finally, the record discloses that plaintiff Nereida Garcia's headlights were not on, and that

6. Plaintiffs contend on appeal that the trial court erred in allowing this testimony into the record. However, plaintiffs' counsel did not object to the admission of this evidence at trial. Since plaintiffs did not make a timely objection during the questioning of the witness, any objection plaintiffs might have had was waived. *Bell v. City of Philadelphia,* 341 Pa. Super. 534, 491 A.2d 1386 (1985).

she was driving a black pickup truck which was very difficult to see unless one was right beside it.

Our review of the record convinces us that the jury's verdict was not contrary to the evidence. Furthermore, we note that Nereida Garcia was in violation of 75 Pa.C.S. §4302 which requires every vehicle upon a highway at any time between sunset and sunrise to display lighted head lamps

We conclude that the jury properly could find that plaintiff Nereida Garcia was negligent[7] and that defendant was not negligent based upon the evidence presented in this case. Accordingly, we hold that plaintiffs are not entitled to a new trial on the ground that the jury's verdict was against the weight of the evidence.

Plaintiffs also contend that the court erred in excluding the testimony of Harold Kulman with respect to his findings of organic brain damage, and in admitting testimony from Dr. Hume with respect to the psychological ramifications of Nereida Garcia's blood sugar levels.

"To constitute reversible error, a ruling on evidence or an instruction to a jury must be shown not only to have been erroneous but harmful to the party complaining." *Anderson v. Hughes*, 417 Pa. 87, 92, 208 A.d 789, 791 (1965). Furthermore, "[i]n order to obtain a new trial the moving party must demonstrate in what way the trial error caused an incorrect result." *Nebel v. Mauk*, 434 Pa. 315, 318, 253 A.2d 249, 251 (1969). See also, *Robinson v. City of Philadelphia*, 329 Pa. Super. 139, 478 A.2d 1 (1984).

---

7. Additionally, we find that Nereida Garcia's negligence was a substantial factor in bringing about defendant's loss. *Majors v. Brodhead Hotel*, 416 Pa. 265, 205 A.2d 873 (1965).

Instantly, we do not agree with plaintiffs' contention that the trial court erred in excluding expert testimony from Harold Kulman as to his findings of organic brain damage in Nereida Garcia. The law in Pennsylvania "is well established that the admission of expert-opinion evidence is a matter for the discretion of the trial court and will not be reversed, overruled or disturbed unless there was a clear abuse of discretion." *Laubach v. Haigh*, 433 Pa. 487, 491, 252 A.2d 682, 683-4 (1969). (citations omitted) From our review of the record before us, we conclude that the trial court did not abuse its discretion in refusing to permit Mr. Kulam to testify regarding his findings of organic brain damage. *Kravinsky v. Glover*, 263 Pa. Super. 8, 396 A.2d 1349 (1979); *Simmons v. Mullen*, 231 Pa. Super. 199, 331 A.2d 892 (1974).

Moreover, even assuming arguendo that it was error to exclude this testimony, we fail to see how this ruling was harmful to plaintiffs since defendant was found not to be liable for Nereida Garcia's injuries, and Mr. Kulman's testimony was offered to prove Nereida Garcia's damages.

Plaintiffs face the same difficulty in their contention that the trial court committed reversible error in allowing Dr. Hume to testify as that the psychological ramifications of Nereida Garcia's blood sugar levels. Claims of trial court error in evidentiary rulings relating to the damage portion of plaintiffs' case are harmless unless plaintiffs can demonstrate that the challenged ruling led the jury to find that defendant was not negligent on the evening in question. Since plaintiffs have failed to show how the evidentiary rulings complained of prejudice the ultimate verdict on liability, we hold that plaintiffs are not entitled to a new trial. *Nebel v. Mauk, supra*.

Finally, plaintiffs contend that the trial court's instructions to the jury were erroneous in that the charge (1) was inadequate with respect to the law of Pennsylvania concerning general and psychological damages, and (2) unduly emphasized plaintiffs' burden with respect to damages by reading certain of defendant's points for charge which were adequately covered by the court's general charge.

We have carefully examined the general charge of the court. Our review of the charge leads us to conclude that plaintiffs' requested points for charge on damages were sufficiently and adequately covered in the trial court's instructions. Accordingly, it was proper to deny plaintiffs' request. *Bohner v. Stine*, 316 Pa. Super. 426, 463 A.2d 438 (1983).

Furthermore, the Pennsylvania Supreme Court has held that in order to constitute reversible error, an instruction to a jury must be shown to be both erroneous and harmful to the party complaining. *Anderson v. Hughes, supra.* In this case, we fail to see how the court's instructions on damages could have harmed plaintiffs since they failed to convince the jury that defendant was responsible for their losses. Plaintiffs have not demonstrated that the trial court's charge on the damages issues influenced the jury's deliberations on the issue of liability. Therefore, plaintiffs are not entitled to a new trial.

Accordingly, we enter the following

## ORDER

And now, September 10, 1987, the post-trial motion for a new trial or, alternatively, judgment notwithstanding the verdict filed by plaintiffs, Juan Garcia and Nereida Garcia, is denied.