422 A.2d 668

**Gerard Paul McKENNA, Appellant,**

v.

**Melva Rosenberg McKENNA.**

Superior Court of Pennsylvania.

Argued Dec. 3, 1979.

Filed Nov. 14, 1980.

46

Charles A. Bierbach, Huntingdon, for appellant.

Melva Rosenberg McKenna, appellee, in pro. per.

Before HESTER, MONTGOMERY and CIRILLO, JJ.*

MONTGOMERY, Judge:

This appeal raises the novel question of whether a New York resident who has been incarcerated in Huntingdon, Pennsylvania since October 26, 1975, can be considered a

* Judge VINCENT A. CIRILLO of the Court of Common Pleas of Montgomery County, Pennsylvania, is sitting by designation.

bona fide resident of this Commonwealth for the purpose of obtaining a divorce.

Prior to his capture and imprisonment, appellant was a resident of New York state. However, since 1974, he has been in continuous incarceration in Pennsylvania and is presently serving a life sentence. Seeking to divorce his wife, a resident of New Orleans, Louisiana, appellant filed a petition to proceed in forma pauperis in Huntingdon County. A hearing was held on October 5, 1978. The question of jurisdiction was raised by the court in an effort to determine whether appellant was a bona fide resident of Pennsylvania for the purpose of the divorce. While conceding that his original residency in Pennsylvania was created involuntarily, appellant asserted his intention to remain in this state if he is subsequently released from the correctional system. Appellant's wife was not present at the hearing, nor has she filed a brief in this appeal. Following the hearing, the lower court found that appellant failed to meet the residency requirement pursuant to 23 P.S. § 16, and denied the petition for want of jurisdiction.

The issue now before us is whether confinement in a correctional institution for more than a year, when coupled with domiciliary intent, constitutes jurisdictional residency. The residency requirement of the Divorce Law is found in Section 16, which provides:

"No spouse shall be entitled to commence proceedings for divorce by virtue of this act who shall not have been a bona fide resident in this Commonwealth at least one whole year immediately previous to the filing of his or her petition or libel. . . ." Act of May 2, 1929, P.L. 1237, 23 P.S. § 16, as amended September 27, 1955, P.L. 606, § 1, 23 P.S. § 16.

The purpose of this jurisdictional requirement is to prevent the Commonwealth from becoming a transitory resting place where parties can secure an annulment of the marriage contract on a divorce. See *Dulin v. Dulin*, 33 Pa.Super. 4 (1906). This court has long held that:

"[t]he fundamental policy of the Commonwealth forbids resort by strangers to its courts for purposes of divorce." *Verbeck v. Verbeck*, 160 Pa.Super. 515, 517, 52 A.2d 241, 243 (1947).

The crucial language of the above statute, "bona fide resident," has been interpreted countless times in conformity with this purpose. Bona fide residence, for purposes of the Divorce Law, means actual residence with domiciliary intent. *Smith v. Smith*, 206 Pa.Super. 310, 213 A.2d 94 (1965); *DiMilia v. DiMilia*, 204 Pa.Super. 188, 203 A.2d 382 (1964); *Horne v. Horne*, 191 Pa.Super. 627, 159 A.2d 239 (1960). Domicile denotes the place where a person has his true, fixed, permanent home and principal establishment. *In re Dorrance's Estate*, 309 Pa. 151, 163 A. 303 (1932). After a domicile is acquired, continuance is presumed. To adopt a new domicile, a party must establish residence in a now locality and have the intention to remain there. *McCauley v. McCauley*, 184 Pa.Super. 361, 134 A.2d 684 (1957).

The lower court, in denying appellant's petition, held that since he did not freely chose to reside where he does, he never acquired the status of a Commonwealth resident for purposes of the Divorce Law. In its opinion, the lower court quoted from *Gearing v. Gearing*, 90 Pa.Super. 192 (1927), wherein the definition of Domicile by Bishop on Marriage, Divorce, and Separation, Vol. 2, section 8, was cited with approval:

"Domicile is . . . the place where he lives, in distinction from that where he transacts his business, the place where he chooses to abide, in distinction from that in which he may be for a temporary purpose; the place which he has chosen, in distinction from one to which he may be exiled or sent a prisoner, or being in the government service to which he is ordered . . ." Id. at 195.

Although our appellate courts have never directly ruled upon this issue before, the Third Circuit Court of Appeals has held that inmates who were incarcerated in states other than their original domicile could not establish new residences. In *United States v. Stabler*, 169 F.2d 995 (3rd Cir. 1948), they stated:

"It is clear that one does not acquire a domicile while imprisoned. (citations omitted) We think that with "residence" as well as with "domicile" some picking out of a place to live in by the individual concerned is involved." Id. at 998.

This position finds support in the Restatement 2nd of Conflict of Laws, 1971. Therein, § 17 states that:

"A person does not acquire a domicile of choice by his presence in a place under physical or legal compulsion."

The rationale for this proposition is that some free exercise of the will on the part of the person involved is required when acquiring a domicile of choice. Over the years, this rule has hardened into an irrebuttable presumption. See *Jones v. Hadicon*, 552 F.2d 249 (8th Cir. 1977).

As stated before, our courts have not yet directly addressed this issue. However, the Sixth Circuit Court of Appeals questioned the application of this "per se rule" in *Stifel v. Hopkins*, 477 F.2d 1116 (6th Cir. 1973). In that case, a federal prisoner who was incarcerated in a state other than his original domicile sought to prove domicile in his current state for purposes of establishing federal diversity jurisdiction. While recognizing that there is a rational basis for saying, as a matter of law, that one who is in a place solely by virtue of superior force exerted by another should not be held to have abandoned his former domicile, the court noted that:

"prisoners appear to be the only persons who may never be able to escape the rule even though there are many other classes of individuals that are subject to compulsion similar to that experienced by prisoners but have been permitted to show a change of domicile to the place of their enforced presence." Id. at 1122.

The court then went on to examine how these groups, including military personnel, federal government employees, students, refugees, mental incompetents and other institutionalized persons, have been able to establish domicile within their new jurisdictions even when compelled by circumstances beyond their control to relocate there. One example

of such recognition by a court of a party's domiciliary intent for a locale to which he had been ordered was *Krasnov v. Dinan,* 333 F.Supp. 751 (E.D.Pa.1971), on rehearing, 339 F.Supp. 1357 (E.D.Pa.1972), affirmed, 465 F.2d 1298 (3rd Cir. 1972). In that case, a member of a semi–monastic order moved to Pennsylvania only because directed to do so by his superiors. Although he did not intend to live in the Commonwealth permanently, but only until reassigned, the court found that these factors did not negate his capacity to claim Pennsylvania as his residence. The court opined:

"[w]hile plaintiff may be correct in alleging that defendant did not move to Pennsylvania of his own choice, certainly he had the choice of making Pennsylvania his home or considering it merely a temporary residence." Id. at 753.

Thus, it seems that a person's domicile is increasingly being determined by close scrutiny of his subjective intentions or state of mind as to whether or not he considers a particular place to be his home.

In light of this trend in the law of domicile, the Sixth Circuit Court of Appeals found in *Stifel* that the rationale of enforced movement did not justify an irrebuttable presumption:

"We believe that the prisoner, like the serviceman or the Cabinet official, should not be precluded from showing that he has developed the intention to be domiciled at the place to which he has been forced to remove. No good reason appears for applying a contrary per se rule to him by making the presumption that he has retained his former domicile, an irrebuttable one." 477 F.2d at 1124.

While this rule may have been promulgated initially to protect the prisoner from the loss of domicile by his enforced absence, we must agree with the Sixth Circuit that the time has come to lay to rest the absolute and unwavering application of this rule of law. In the instant case, although appellant did not initially arrive in Pennsylvania of his own free choice, he did have the choice of adopting this Commonwealth as his home or of continuing to consider New York as

his permanent domicile. Bars may confine the body, but not the mind.

In making the factual determination as to whether a prisoner is a bona fide domiciliary, the court in *Stifel* recommended that such facts be considered as the possibility of parole, the manner in which the prisoner has ordered his personal and business transactions, and any other factors which might corroborate his statements of intent.[1]

■ So viewed, the record herein reflects only unsubstantiated declarations by the appellant as to his domiciliary intent. The burden of proving a change of domicile rests upon the person asserting the change. *Liscio v. Liscio*, 203 Pa.Super. 83, 198 A.2d 645 (1964). We therefore remand to the lower court for a full evidentiary hearing to acquire additional information concerning appellant's domiciliary intent.

Reversed and remanded for further proceedings consistent with this opinion.

---

1. In *Stifel*, as herein, the prisoner was also serving a life sentence. In explaining his domiciliary intent, he stated that his crime was so heinous and his community was so outraged, that he would never return to his original domicile. This was accepted by the court as a persuasive reason for a change of domicile.