## Sinha v. Sinha

*James R. Flick*, for plaintiff.
*Pamela A. Falls*, for defendant.

deFURIA, J., February 8, 1983—The parties to this divorce action were married on the 11th day of March, 1974, at Patna, Bihar, India. In August, 1976, plaintiff came to America to attend Rutgers University. It appears from a review of the record that until mid-1979, the parties regularly corresponded and until the early part of 1979, there were hopes that defendant-wife would be successful in her attempt to obtain a visa. Defendant still resides in India.

In August, 1979, a divorce action was filed in New Jersey by plaintiff herein. However, that action was terminated because of plaintiff's move to Pennsylvania. Husband moved to Media, Delaware County in January, 1980, and has resided in this

county ever since. Additionally, since February, 1980, plaintiff has been employed by the County of Delaware.

On or about October 15, 1980, plaintiff filed a complaint in divorce alleging, inter alia, that "the parties have been living separate and apart for a period in excess of three years and that the marriage is irretrievably broken under §201(d) of the Divorce Code." Attached to the complaint and served upon defendant was plaintiff's affidavit under Section 201(d).

Upon defendant's request and by order of this court dated February 12, 1981, defendant was granted an extension of time to file an answer or a responsive pleading. By further order of this court, defendant was granted until July 15, 1981, to file an answer or a responsive pleading.

On or about July 13, 1981, an affidavit of service was filed of record. Within the next week, Pamela A. Falls, Esq., entered her appearance on behalf of defendant and filed an answer to complaint and objections to venue and jurisdiction. By way of her answer, defendant also raised ancillary issues of alimony pendente lite, counsel fees and costs, equitable distribution, and permanent alimony.

On September 2, 1981, a general master was appointed to hear testimony and to make recommendations with regard to the dissolution of marital status and the issue of jurisdiction and/or venue.

On or about June 30, 1982, the general master filed his report. The master first addressed the issue of jurisdiction and/or venue and concluded as a matter of law that jurisdiction lies in Pennsylvania and Delaware County is the proper county of venue. The master then addressed the issue of whether the 201(d) ground has been met and concluded that the parties have been separated for the statutory period

of three years and that the marriage is irretrievably broken. In Section V of his report, the master recommended that a decree in divorce be granted.

On July 12, 1982, defendant filed exceptions to master's report. Legal argument was heard by this court and counsel submitted well-written and thoughtful memoranda of law. By order dated October 13, 1982, said exceptions were overruled and dismissed. Then, on November 10, 1982, the decree was signed, divorcing the parties from the bonds of matrimony and reserving jurisdiction in the court to dispose of ancillary matters properly raised by the parties.*

## I. FEDERAL LAW DOES NOT PRECLUDE PLAINTIFF FROM BEING A RESIDENT OF PENNSYLVANIA AS REQUIRED BY §302 OF THE DIVORCE CODE

The Divorce Code, §302, provides that no spouse shall be entitled to bring a divorce proceeding pursuant to the act, unless at least one of the parties has been a *bona fide resident* in this Commonwealth for at least six monts immediately previous to the filing of the complaint. The section further allows both parties to be competent witnesses to prove residence and proof of actual residence within the Commonwealth for six months "shall create a presumption of domicile within the Commonwealth."

In this Commonwealth, the phrase "bona fide resident" has been interpreted to mean actual residence with domiciliary intent. Domicile denotes the place where a person has his true, fixed, permanent home and principal establishment. See McKenna v. McKenna, 282 Pa. Super. 45,

---

*Defendant appealed to Superior Court, hence this opinion.

422 A. 2d 668 (1980); Smith v. Smith, 206 Pa. Super. 310, 213 A. 2d 94 (1965).

In McKenna v. McKenna, supra, a New York resident who was incarcerated in Huntingdon, Pennsylvania, filed a complaint in divorce. The question of jurisdiction was raised by the lower court in an effort to determine whether the prisoner was a bona fide resident for the purpose of the divorce. The prisoner asserted his intention to remain in the Commonwealth if released from the correctional system. The lower court found that the prisoner-plaintiff failed to meet the residency requirement. The Superior Court reversed and remanded, holding that the irrebutable presumption that the prisoner retained his New York domicile merely because his presence in Pennsylvania was under legal compulsion would be rejected in favor of an examination of his domiciliary intent.

Moreover, Section 302 contains an important and significant addition to the residence section found in the Divorce Law of 1929; that proof of *actual* residence creates a presumption of domicile.

In this case, indicia of actual residency and the intention to remain in the United States are found in the fact that plaintiff came to the United States in 1976 on a Temporary Nonimmigrant Student Visa and has not been back to India except for a short trip taken in 1982. He moved to Media in January, 1980 and has been employed here since February, 1980. Plaintiff testified that he does not intend to return to India and will retain his Delaware County job so long as it is available to him. Plaintiff has a Pennsylvania driver's license, auto registration card, and bank accounts. The record reflects that Immigration status H1, has been sought as of February, 1980. Various approvals of H1 classification under the Immigration Laws

were issued. The U.S. Department of Labor has issued a letter approving the first step of permanent residence for labor certification. In October, 1981, the U.S. Immigration and Naturalization Service issued plaintiff third preference status for approval.

Clearly, plaintiff-husband has been a bona fide resident in this Commonwealth for at least six months previous to the filing of the complaint.

In this action, the issue of domicle is challenged by defendant-wife. Plaintiff was an H1 visa holder at the time the complaint was filed.

Defendant argues that, as a matter of Federal Law, a nonimmigrant alien such as plaintiff, with his H1 immigration classification, is required to maintain a permanent present residence abroad "which he has no intention of abandoning" and therefore, is precluded from having the requisite domiciliary intent.

One fallacy in defendant's argument is that the Immigration and Nationality Act of 1952 as amended does not forbid a nonimmigrant alien having a residence in a foreign country which he has no intention of abandoning to change his intention. In fact, the Immigration and Nationality Act allows the alien to adjust his status: §245, U.S.C. §1255.

Second, our Federal Law, 42 U.S.C. §1981, guarantees to all persons, including aliens, within the jurisdiction of the United States that they shall have the same right in every state and territory to make and enforce contracts to sue, be parties and give evidence. As long as they are here, they are protected in their persons and properties and are allowed to sue as well as be sued. More importantly, the determination of domicile for the purpose of divorce is a state question and not controlled by the

nature of plaintiff's visa from the United States Department of State under the Immigration and Nationality Act. Chowhan v. Chowhan, 67 D. & C. 2d 610, 75 Lack. Jur. 65 (1975).

In the Chowhan case, defendant contended by way of preliminary objections, that plaintiff could not acquire a domiciliary residency for purpose of divorce in Pennsylvania because she was in the United States on a temporary visa without permanent status and therefore was precluded from establishing a permanent residence and domicile.

The court of Common Pleas of Lackawanna County disagreed with defendant's contention and dismissed the preliminary objections.

While we have been unable to locate any Appellate Court decisions in Pennsylvania dealing with this issue, other jurisdictions have addressed the issue. In Alves v. Alves, 262 A. 2d 111 (D.C. 1970), the court held that the fact that plaintiff entered the United States on a nonimmigrant visa, did not preclude him from becoming domiciled in the District of Columbia for the purpose of a divorce action. See also Torlonia v. Torlonia, 108 Conn. 292, 142 A 843 (1928).

In Gosschalk v. Gosschalk, 48 N.J. Super. 566, 138 A. 2d 774, Affd. 28 N.J. 73, 145 A. 2d 327 (1958), an alien who entered the country under a nonimmigrant visitor's visa but with the intention to remain permanently in the United States could establish a domicile in New Jersey for divorce jurisdictional purposes.

Moreover, "Ruling that an alien who enters the United States under the condition that he have a residence in a foreign country which he has no intention of abandoning can form the requisite intent to establish a domicile within a state, the court in Williams v. Williams, (1971, DC Virgin Islands)

328 F Supp. 1380, held that even assuming that an alien represents his true intent at the time he is granted entrance to the country, the fact that he may be illegally in the country and deportable would not preclude him from forming an actual intent to make his home here." 51 ALR 3d 223, at page 235.

It has been held that even an alien enemy may bring suit for divorce. Oppler v. Oppler, 54 D. & C. 213 (1945). See 2 Freedman, Law of Marriage and Divorce in Pennsylvania, § 509—Alien.

In Chowhan, supra, the court stated at pages 616-617:

"The general rule, therefore, that has been established by the unanimous rulings in the adjudicated cases on the subject is that an alien may establish residence or domicile for the purposes of divorce jurisdiction in much the same way as a citizen can."

Defendant refers this court to a recent case, Toll v. Moreno, _____ U.S. _____, 102 S.Ct. 2977, _____ L.Ed. _____ (1982), as controlling in this instance. In Toll, the University of Maryland granted preferential treatment for purposes of tuition and fees to students with "in-state" status. Although citizens and immigrant aliens could obtain in-state status upon a showing of domicile within the state, nonimmigrant aliens, even if domiciled, were not eligible for such status.

The Supreme Court held that the University's policy of categorically denying domiciled nonimmigrant aliens who hold G-4 visas (visas issued to nonimmigrant aliens who are officers or employees of certain international organizations and to members of their immediate families) in-state status under which preferential treatment is given to

domiciled citizen and immigrant alien students for purposes of tuition and fees, is invalid under the Supremacy Clause.

The facts of the Toll case are readily distinguishable from the facts presented in this case. This court is not attempting to regulate immigration nor discriminate against aliens lawfully admitted to this country. It is apparent, therefore, that the Toll case is not controlling in this instance.

## II. VENUE IS PROPER IN DELAWARE COUNTY

Having decided that plaintiff is not precluded from being a resident of Pennsylvania for purposes of §302 of the Divorce Code, we next focus on the question of venue.

Pa.R.C.P. 1920.2 provides: "The action, except a claim for custody, may be brought only in the county in which the Plaintiff or Defendant resides."

The record reflects that plaintiff has physically resided in the Commonwealth and in the County of Delaware since 1980. Since defendant lives in India, there is no other possible county where the action could have been filed.

## III. THREE YEAR SEPARATION AND IRRETRIEVABLE BREAKDOWN OF THE MARRIAGE

Since September, 1976, the parties have not seen each other except for a brief encounter in January, 1982, while plaintiff was in India on vacation. In the fall of 1976, plaintiff came to the United States on a F1 Temporary Nonimmigrant Student Visa to study advanced Regional Planning at Rutgers University. From the record of this case, it appears that until some time in 1979 both parties made efforts through governmental contacts to obtain a visa for

defendant which would permit her to join her husband in this country. However, those efforts failed.

Defendant contends that the parties maintained their marital ties in the only ways reasonably possible under the circumstances, to wit, by letters and telephone calls, and therefore, a three year separation did not occur.

With this contention the court disagrees. We find that the parties have "lived separate and apart" for at least three years. Section 104 of the Divorce Code defines "separate and apart" as "complete cessation of any and all cohabitation." Webster's New Collegiate Dictionary defines "cohabit" as "to live together as husband and wife." A reading of the pertinent portions of the record convinces us that the parties have not lived together as husband and wife for more than three years. Moreover, defendant herself instituted an action for support in India that contained an allegation of desertion on plaintiff's part for a period of five years.

We next focus on the issue of whether the marriage is irretrievably broken. Section 104 of the Code defines "irretrievable breakdown" as "Estrangement due to marital difficulties with no reasonable prospect of reconciliation." Webster's New Collegiate Dictionary defines estrangement as "(2) to arouse esp. mutual enmity or indifference in where there had formerly been love, affection or friendliness: alienate—."

It is clear from the record in this case that plaintiff desires a divorce. A review of the testimony makes it clear that plaintiff's affections became increasingly alienated while living apart from defendant. In plaintiff's mind, the difficulties concerning defendant obtaining a visa generated issues of distrust between them. Additionally, the miles between the parties and the family and cul-

tural ties harmed the marriage. Plaintiff further testified that there is no reasonable prospect in his mind for reconciliation of the marriage.

For all the above reasons, this court entered its order of October 13, 1982 dismissing said exceptions to the general master's report and entered the decree in divorce dated November 10, 1982.