515 A.2d 963

**Gregory T. GREENWOOD, Appellant,**

v.

**Kristen HILDEBRAND.**

Superior Court of Pennsylvania.

Argued April 21, 1986.

Filed Oct. 1, 1986.

David L. Lutz, Harrisburg, for appellant.

James L. Goldsmith, Harrisburg, for appellee.

Before WICKERSHAM, BROSKY and WATKINS, JJ.

WICKERSHAM, Judge:

Gregory T. Greenwood appeals from the judgment entered in his favor by the Court of Common Pleas of Dau-

phin County following a trial by jury in this personal injury action.

On July 24, 1981, appellant, then a summer intern at the Lebanon Veterans' Administration Hospital, Lebanon, was travelling east on West Chocolate Avenue (U.S. Route 422) in Hershey. He was stopped in a line of traffic at a red light when his vehicle was rear ended by a vehicle driven by appellee, Kristen Hildebrandt. As a result, appellant's vehicle was forced into the rear of the vehicle preceding it.[1] Appellee admitted that she failed to see appellant's vehicle or stop in time, although there was conflicting testimony at trial as to how fast she was travelling at the time of the collision.

As a result of the impact, appellant was forced forward into the steering wheel and dashboard, suffering injuries to his neck, left shoulder, and left arm. Shortly after the accident, appellant drove to the Hershey Medical Center, where he was treated and released. Appellant was seen on three other occasions at the Hershey Medical Center during the remainder of the summer of 1981, each time as an outpatient. At the conclusion of the summer, appellant returned to Ohio where he resumed his graduate studies at Bowling Green State University. There he sought further treatment for his injuries from various medical personnel. Eventually a diagnosis of thoracic outlet syndrome was made, and in October 1982, appellant was hospitalized for five days to undergo an unsuccessful rib resection. Thereafter he continued to receive periodic inpatient and outpatient treatment in both Bowling Green and Indianapolis, Indiana, where he moved in August 1983.

On July 22, 1983, appellant commenced the instant suit for damages stemming from the injuries he had received in the accident. A jury trial held from March 4–6, 1985 resulted in an award in his favor in the amount of $7,500.00. On March 15, 1985, appellant filed a motion for a new trial,

1. The driver of the third vehicle, William J. Bohm, III, of State College, was not a party to this suit.

which was denied on July 1, 1985. Following the entry of judgment on the verdict, appellant filed this timely appeal.

Appellant raises the following three issues before us:

1. Did the trial court err in ruling that Dr. Greenwood was not a domiciliary of Ohio, thereby excluding evidence of Dr. Greenwood's total medical expenses recoverable under Ohio law?

2. Did the trial judge err in finding that a damage award of $7,500 was not inadequate as a matter of law?

3. Did the trial judge err by striking portions of Dr. Perry Eagle's deposition testimony?

Brief for Appellant at 3.

Appellant first argues that the lower court erred in finding him a domiciliary of Kentucky, a no-fault state which disfavors double recovery, rather than Ohio, which allows such recovery.

Section 110(c) of the now repealed Pennsylvania No-fault Motor Vehicle Act [2] contains the choice of law provisions for determining the rights of an accident victim injured in Pennsylvania, but domiciled in another state, to sue in tort. It states: "The right of a victim ... to sue in tort shall be determined by the law of the state of domicile of such victim." 40 Pa.C.S. § 1009.110(c)(2); *Bell v. Santiago*, 351 Pa.Super. 431, 506 A.2d 424 (1986). The lower court ruled that appellant was a domiciliary of Kentucky on the date of the accident, and therefore, his right to sue in tort was governed by Kentucky law. We agree.

■■■ The issue of domicile is a mixed question of law and fact reviewable by an appellate court. *Stambaugh v. Stambaugh*, 458 Pa. 147, 329 A.2d 483 (1974); *McLarin v. McLarin*, 350 Pa.Super. 153, 504 A.2d 291 (1986). Domicile is a relationship which the law creates between an individual and a particular locality or country. The question of domicile is to be determined by the law of the forum, in this

2. Act of July 19, 1974, P.L. 489, No. 176, §§ 101 to 701, 40 P.S. § 1009.101 *et seq*, repealed by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

case, Pennsylvania. *See* 25 Am.Jur.2d *Domicil* § 3 (1966). A domicile of origin is that which one acquires at birth; it is presumed to continue until another domicile is affirmatively proved. *In re Estate of McKinley*, 461 Pa. 731, 337 A.2d 851 (1975). It is well-settled that a minor child has the same domicile as his or her parents. *Coombs v. Coombs*, 225 Pa.Super. 304, 303 A.2d 498 (1973). When a child reaches majority, he or she may acquire a new domicile by voluntarily establishing a new residence with the present intention to make it either his or her permanent home, or his or her home for the indefinite future. *Shishko v. State Farm Insurance Co.*, 553 F.Supp. 308 (E.D.Pa.1982), *aff'd*, 722 F.2d 734 (3d Cir.1983); *In re Estate of McKinley*, *supra; McKenna v. McKenna*, 282 Pa.Super. 45, 422 A.2d 668 (1980). Thus, the terms domicile and residence are not interchangeable; unlike residence, which is a physical fact, domicile is a matter of intention. *Laird v. Laird*, 279 Pa.Super. 517, 421 A.2d 319 (1980). Because domicile continues until a new domicile is established, an individual asserting a change of domicile has the burden of proving it. *Shishko v. State Farm Insurance Co.*, *supra*. This burden entails proving by clear and convincing evidence, residence in a new locality with present intent to make that residence a permanent home, coupled with the manifested intent of abandoning the former domicile. *In re Estate of McKinley*, *supra; McLarin v. McLarin*, *supra; Zinn v. Zinn*, 327 Pa.Super. 128, 475 A.2d 132 (1984).

At the time of the accident in 1981, appellant was a 26 year old graduate student at Bowling Green State University in Ohio ("B.G.S.U."). His family had resided in Indiana until appellant was in high school, at which time the family moved to Kentucky. Thus, Kentucky became appellant's domicile in 1971. After graduation from high school in Kentucky in 1973, appellant left to attend DePauw University in Indiana, spending most of his summers back in Kentucky. Appellant testified that he still considered Kentucky to be his home during college. In 1978, appellant began his graduate studies in Ohio, but resided for brief

periods of time in Connecticut, Kentucky, Indiana, and Pennsylvania before obtaining his degree in 1983. At that point, appellant, who had married in 1982, and his wife moved to Indianapolis, Indiana, where they resided at the time of trial.

When appellant moved to Ohio in 1978, he satisfied the first requirement of domicile—he had taken up residence in Ohio before the accident. We are not convinced, however, that he possessed the second requirement of domicile—intent. It is apparent that appellant took up residency in Ohio for the purpose of attending graduate school. He testified that the sole reason he was in Ohio was to attend B.G.S.U. and that it was not his intention to remain in Ohio after he had graduated. Less than two months prior to the accident, appellant applied to the Kentucky Higher Education Assistance Authority for a guaranteed student loan, listing his permanent home address as Frankfort, Kentucky. A section of that application was completed by B.G.S.U., and it also listed appellant as a Kentucky resident. Furthermore, appellant continued to use his Kentucky driver's license and receive mail at his parent's home in Kentucky.

We note that in 1980, appellant applied for and was granted a waiver of the non-resident fee at B.G.S.U. In order to obtain such a waiver, however, he needed to demonstrate only that he had lived in Ohio for twelve consecutive months and that no part of his financial support had been provided by non-Ohio residents. Such conditions are not necessarily indicative of domicile. Likewise, the fact that appellant voted, paid taxes, and had a bank account in Bowling Green is more indicative of residence than of domicile.

As stated above, the acquisition of a domicile of choice requires both physical presence and an intent to remain permanently or indefinitely. *McKenna v. McKenna, supra.* Since the concept of change of domicile requires some free exercise of will on the part of the person involved, *id.,* out-of-state students generally have been

viewed as temporary residents who are located in the state only for the duration and purpose of their studies. 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3619 (1984). Such an out-of-state student is presumed to lack the intention necessary to establish a new domicile. *Shishko v. State Farm Insurance Co., supra.* Appellant herein did not meet his burden of proof by clear and convincing evidence that he had made Ohio his new domicile. Therefore, we must agree with the lower court that appellant's domicile was still Kentucky at the time of the accident. Accordingly, the instant action was governed by the law of Kentucky, and the lower court did not err by refusing to instruct the jury under the law of Ohio.

Next, appellant argues that even if he was a Kentucky domiciliary, the court erred in excluding evidence of his total medical expenses. The lower court determined that since Kentucky law provided for $10,000.00 in basic reparation benefits, that amount should be subtracted from the total medical expenses, and not offered into evidence for the jury's consideration. Again, we agree.

Once the court decided that appellant was domiciled in Kentucky at the time of the accident, section 110(c)(2) of our No-fault Act provides that his right to sue in tort should be determined by the law of Kentucky. Like Pennsylvania prior to the repeal of the No-fault Act, Kentucky has abolished tort liability to the extent that basic reparation benefits (i.e., basic loss benefits) have been paid to a victim of an automobile accident.

[I]t is clear to us that under the Kentucky No-Fault Act, an injured party is not entitled to an award of damages from the defendant in the trial on liability for any item of damages which was compensated by BRB [Basic Reparation Benefits]. KRS 304.39–060(2)(a) provides:

Tort liability with respect to accidents occurring in this commonwealth and arising from the ownership, maintenance, or use of a motor vehicle is *"abolished"* for damages because of bodily injury, sickness or disease

to the extent the basic reparation benefits provided in this subtitle are payable therefor, or that would be payable but for any deductible authorized by this subtitle, under any insurance policy or other method of security complying with the requirements of this subtitle, except to the extent noneconomic detriment qualifies under subsection (2)(b) hereof.

*Progressive Casualty Insurance Co. v. Kidd,* 602 S.W.2d 416, 417–18 (Ky.1980); *Fann v. McGuffey,* 534 S.W.2d 770 (Ky.1975). Since appellant has received, or is entitled to receive, basic reparation benefits of $10,000.00 under his father's Kentucky automobile insurance policy, he is precluded by Kentucky law from recovering the same amount from appellee. As clearly enunciated by the Supreme Court of Kentucky, double recoveries by an injured party are disfavored. *See, e.g., Progressive Casualty Insurance Co. v. Kidd, supra; United States Fidelity & Guaranty Co. v. Smith,* 580 S.W.2d 216 (Ky.1979); *State Farm Mutual Automobile Insurance Co. v. Fletcher,* 578 S.W.2d 41 (Ky.1979).

Appellant asserts, however, that even if he is precluded from recovering the $10,000.00 paid as basic reparation benefits, he is still entitled to submit to the jury the full amount of his medical bills, $13,929.99, which include the $10,000.00 no-fault payment, as evidence of pain of suffering. Appellant cites Kentucky caselaw which permits the admission of medical bills to prove the extent of pain and suffering. *See Barnes v. Jones,* 351 S.W.2d 506 (Ky.Ct. App.1961).

The lower court denied admission of the entire amount of medical bills, because it held that under Pennsylvania caselaw, the dollar amount of medical services provided is not probative of the degree and extent of pain and suffering experienced by the victim and thus the medical bills incurred by that victim are irrelevant and inadmissible as evidence to measure pain and suffering. *See Martin v. Soblotney,* 502 Pa. 418, 466 A.2d 1022 (1983). Clearly, Pennsylvania and Kentucky have different laws regarding

the admissibility of medical bills which are not recoverable under their no-fault acts. The question then becomes which state's evidence law is applicable—Pennsylvania's or Kentucky's? While the lower court was required to follow Kentucky law to determine what could be properly sought and recovered at trial, we agree that it is the evidentiary law of Pennsylvania which governs. *See* Restatement (Second) of Conflict of Laws § 138 (1971) (local law of the forum determines admissibility of evidence); 16 Am.Jur.2d *Conflict of Laws* § 131 (1979) (questions of evidence are governed by the law of the forum). *Compare Bell v. Santiago, supra* (while right of victim of motor vehicle accident to sue in tort shall be determined by law of his domicile, when tort action is brought in a Pennsylvania court, Pennsylvania statute of limitations and its interpretation as to when and how it begins to run, will be applied).

 Therefore, evidence as to the amount of medical bills paid by no-fault insurance was not admissible to prove pain and suffering and the court properly excluded such evidence.[3]

 In his second issue, appellant contends that the $7,500.00 verdict in his favor was inadequate as a matter of law. After careful consideration of the record, the briefs of the parties and the applicable law, we find that the opinion of the learned trial Judge, The Honorable Warren G. Morgan, has thoroughly and correctly addressed this issue and we see no need to discuss it further.

Finally, appellant argues that the court erred in striking certain portions of a defense witness's deposition testimony. Pursuant to Pa.R.C.P. No. 4020(a)(5),[4] the lower court ad-

---

**3.** We note that the court did state to the jury that the $3,929.99 of medical bills admitted represented the *unpaid* medical expenses of appellant.

**4.** Pa.R.C.P. No. 4020(a)(5) states:

**Rule 4020. Use of Depositions at Trial**

(a) At the trial, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who

mitted the deposition testimony of Dr. Perry Eagle at trial. Before it was read to the jury, however, the trial court deleted from the record all references to insurance or insurance companies made by Dr. Eagle. Appellant contends that the court erred in not admitting Dr. Eagle's testimony verbatim.

The general rule in Pennsylvania is that reference to insurance coverage held by one of the parties to an action will be excluded where such reference would be irrelevant and prejudicial. *Price v. Yellow Cab Co. of Philadelphia,* 443 Pa. 56, 278 A.2d 161 (1971); *Beechwoods Flying Service Inc. v. Al Hamilton Contracting Corp.,* 317 Pa.Super. 513, 464 A.2d 440 (1983), *aff'd,* 504 Pa. 618, 476 A.2d 350 (1984); *Frank v. Peckich,* 257 Pa.Super. 561, 391 A.2d 624 (1978). This " 'collateral source' rule was intended to avoid precluding a claimant from obtaining redress for his or her injury merely because coverage for the injury was provided by some collateral source, *e.g.* insurance." *Beechwoods Flying Service, Inc. v. Al Hamilton Contracting Corp.,* 504 Pa. at 623, 476 A.2d at 352. The rule is intended to prevent a wrongdoer from taking advantage of the fortuitous existence of a collateral remedy. *Id.* Although it is unclear whether, under the facts of this case, the collateral source rule would even apply, since appellant was not the alleged wrongdoer, we find no harm in the court's exclusion of the testimony.

In the instant case, appellant does not argue that the deleted references to insurance prejudiced him in any way, but rather that the court erred by editing the exact answers given by Dr. Eagle in response to appellee's counsel's questions. His contention is that when a party asks its expert witness a question, the answer must be accepted as is; the asking party cannot be permitted to modify its

had notice thereof if required, in accordance with any one of the following provisions:

 . . . . .

(5) A deposition upon oral examination of a medical witness, other than a party, may be used at trial for any purpose whether or not the witness is available to testify.

expert's answers. Appellant does not support his contention by reference to any caselaw, however, and we can find absolutely no prejudice to appellant resulting from the editing. We note that only six phrases, all concerning insurance coverage, were striken in the forty-three page deposition, and even with the deletions, the testimony was easily readable and understandable. Since the deletion of the witness's references to insurance neither changed the substance or content of the witness's testimony, except to exclude the prejudicial and irrelevant references to insurance, nor prejudiced appellant in any way, we find no error in the trial court's compliance with the "collateral source" rule.

Finding appellant's issues to be meritless, we affirm the judgment of the court below.

Judgment affirmed.