**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**Mary Jane SPROUT, Individually and as Executrix of the Estate of Nicole S. Sprout, Deceased, Russell W. Mutzabaugh, David Christopher Nott, Enola Auto Parts, Inc. and Frank William Potter, Jr., Defendants.**

**Civ. A. No. 1: CV–90–1253.**

United States District Court, M.D. Pennsylvania.

May 28, 1991.

---

James G. Nealon, III, Caldwell & Kearns, Harrisburg, Pa., for plaintiff.

Richard A. Sadlock, Angino & Rovner, Harrisburg, Pa., David J. Foster, Leslie M. Fields, Lemoyne, Pa., Joseph A. Ricci, John M. Glace and Thomas A. Placey, Mancke & Wagner, Harrisburg, Pa., for defendants.

MEMORANDUM

RAMBO, District Judge.

Before the court are the motions for a new trial of defendants Russell W. Mutzabaugh and Mary Jane Sprout. Trial was held before this court on March 11, 1991. At trial, defendants had been assigned the burden of proof because the action was for a declaratory judgment by an insurer seeking to exclude defendants from recovering under the insurer's insureds' policy. At the close of defendants' case, this court granted a directed verdict for plaintiff, holding that defendants had not produced sufficient substantive evidence to carry their burden of proof.

Defendants Mutzabaugh and Sprout now contend that the court made several errors of law at trial which necessitate granting defendants' a new trial.

*Background*

On April 14, 1990 a car driven by defendant Frank Potter, Jr. for reasons unknown crossed the center line of Route 11 near the Cumberland County–Perry County border. Potter's vehicle collided first with a car operated by Pamela Mutzabaugh and then a pickup truck operated by David Christopher Nott. Both were traveling in the opposite direction. As a result of the accident, the passenger in Potter's car, Nicole S. Sprout, and Mutzabaugh sustained fatal injuries, and the other parties sustained various personal and property injuries.

Subsequently, a number of personal injury and property claims were made against plaintiff Allstate. At the time of these events, Allstate maintained an automobile insurance policy in the names of the Bairs. The policy had bodily injury limits of $100,000 per person and $300,000 per occurrence. Allstate also insured Kenneth Bair under a personal umbrella policy with liability limits of $1 million. The claimants against Allstate contended that Potter was a "resident relative" as defined by the policies and was thus covered by them. In June 1990, plaintiff filed this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration of its

rights and responsibilities under the two insurance policies.[1]

*Discussion*

■ A court should grant a new trial pursuant to Federal Rule of Civil Procedure 59 if, among other reasons, the court made a prejudicial error of law during the original trial. 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2805 at 38 (1973).

Defendants Sprout and Mutzabaugh allege five errors on the part of the court. The court will address these supposed errors in turn.

I.  Burden of Proof

■ At the pretrial conference, the court announced that defendants would bear the burden of proving that Potter was a resident of his parent's household. Obviously, this was a key ruling to the disposition of the action because much of defendants' case consisted of supposed inconsistencies in statements made by Potter's family, inconsistencies which could likely not be used as substantive evidence in proving defendants' allegations as to Potter's residency but which could chip away at the credibility of the witnesses in disproving plaintiff's case.

The court based its ruling on the following reasoning. In *Fireman's Fund Insurance Co. v. Videfreeze Corp.*, 540 F.2d 1171 (3d Cir.1976), *cert. denied* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977), the Third Circuit Court of Appeals held that the issue of burden of proof is one of substantive, not procedural law, and thus state law governs its disposition under the *Erie Railroad* doctrine. Here, Pennsylvania's Declaratory Judgment Act, 42 Pa. Cons.Stat.Ann. §§ 7531–7541 (Purdon's 1982), is silent as to the burden of proof in declaratory judgment actions concerning the scope of coverage under an insurance policy. The court could unearth no interpretive case law assessing such a burden.

*Fireman's Fund* involved a declaratory judgment action brought by an insurer against its insured under the Virgin Islands' Declaratory Judgment Act to determine who was responsible for damage allegedly inflicted on the insured property by an earthquake. Defendant asserted that since the damage was caused by an earthquake, it was covered by its insurance policy with plaintiff, while the plaintiff insurer insisted that the damage was due to other causes.

Like its Pennsylvania counterpart, the Virgin Islands' act does not address the issue of burden of proof. In crafting a burden of proof standard, the Third Circuit relied on a New Hampshire case, *Travelers Ins. Co. v. Greenough*, 88 N.H. 391, 190 A. 129 (1937), where the New Hampshire Supreme Court "refused to displace the burden of proof of coverage from its normal location on the insured despite the reversed positions of the parties in the action." *Fireman's Fund*, 540 F.2d at 1175. In *Greenough*, the Third Circuit noted, the New Hampshire court, quoting Wigmore, also emphasized that the hallmark of burden of proof analysis is flexibility and " 'broad reasons of experience and fairness.' "

In addition, the Third Circuit found persuasive the reasoning of the Eighth Circuit in *Reliance Life Insurance Co. v. Burgess*, 112 F.2d 234 (8th Cir.1940), *cert. denied*, 311 U.S. 699, 61 S.Ct. 137, 85 L.Ed. 453 (1940) in concluding that the risk of nonpersuasion "rests upon the party who, as determined by the pleadings, asserts the affirmative of an issue and it remains there until termination of the action." *Id.* at 238.

The *Fireman's Fund* court identified four factors to aid in assigning the burden of proof in a declaratory judgment action: 1) whether plaintiff objected to assuming the burden of proof; 2) which party asserted the affirmative of the issue; 3) which party would lose in the absence of any evidence on the issue; and 4) what sort of relief is sought. Using these factors, the *Fireman's Fund* court placed the burden on defendant.

---

1.  Pursuant to a stipulation of the parties, defendants Enola Auto Parts, Inc. and David Christopher Nott were dismissed from the suit in November 1990.

Applying the *Fireman's Fund* factors to the present case, it appears that defendants here were properly made to bear the burden of proof at trial. First, Allstate, the plaintiff, is the party which first balked at assuming the burden. Second, the crux of defendants' case is the assertion that the driver Potter was living with his parents and thus was an insured under his parents' policy. This is a factual question directly analogous to the factual question in *Fireman's Fund* where the defendant/insured asserted that the damage done to its property was the result of an earthquake, which was covered under the policy, and not heavy rains, which were not. As the court noted in *Fireman's Fund*, "the insured is typically charged with proving that his loss was covered under the insurance contract." 540 F.2d at 1171. Thus, defendants appear to be asserting the affirmative of the issue. Third, and closely related to the "affirmative of the issue factor," is that defendants here, in seeking to place Potter within the umbrella of the policy, risk default if they fail to produce any evidence of coverage. This is in line with the reasoning in *Fireman's Fund*, where the court felt that if a party asserts the affirmative of the issue, the party generally risks losing if they have no evidence. Last, the fact that Allstate is seeking only a declaratory judgment works in the favor of assigning the burden to defendants. As the *Fireman's Fund* court stated,

> When, as here, the insurance company seeks only a declaration of non-liability and the insured asserts coverage under the policies with the company ... the insured is in reality seeking recovery under the policy and the insurer is denying the liability.... We thus place the burden of proof, or the risk of non-persuasion, where it would ordinarily rest under the Anglo–American system of jurisprudence—on the insured.

*Id.* at 1176.

The court is aware that footnote four of the *Fireman's Fund* case may, to an extent, temper that case's applicability to the present facts. In that footnote, the Third Circuit distinguishes its holding from the authority of *Moore's Federal Practice*, which opines that the burden should be on the plaintiff insurer in a declaratory judgment action. Moore, in disapproving the *Greenough* case, stated that the insurance company in this type of case " 'seeks an advanced determination of its liabilities, and the injured third party is forced to litigate the coverage issue before it has established its claim against the insured.' " 540 F.2d at 1176 n. 4 (quoting *Moore's Federal Practice* ¶ 57.31[2] at 57–268 (1975)). The *Fireman's Fund* court, however, explicitly distinguishes the type of case Moore is concerned with, involving a dispute between third parties and an insurance company, and a case such as *Fireman's Fund* where the dispute is solely between the company and the insured. The court stated:

> Clearly, we are here faced with an entirely different situation in which the equities dictate a different result—there are no injured third parties, there is no litigation awaiting the outcome of this case, and since the issue of coverage has already been joined between the insureds and the insurer by the filing of proofs of loss by the insureds, there is no unfair prematurity.

*Id.* Moore's concern, which the Third Circuit recognizes in this footnote, is that in situations where the insured has caused an accident and the company is disputing coverage, the company can force the injured third parties into a suit on the merits before they are prepared, effectively depriving them of their rights as potential plaintiffs to choose, for instance, the time and place of filing a lawsuit for their injuries.

This court is swayed, however, first, by the Third Circuit's refusal to explicitly deny the applicability to a situation involving third parties, and second, by its strong reliance on *Greenough*, a case which Moore severely criticized. In addition, the court notes that the factors enumerated by the circuit court in *Fireman's Fund* have been fulfilled here—with the balance weighing toward defendants assuming the burden.

No Pennsylvania or Third Circuit law has apparently been crafted subsequently holding that the *Fireman's Fund* analysis ap-

plies to cases involving third parties or not. However, the Tenth Circuit, in *Utah Farm Bureau Ins. Co. v. Dairyland Ins. Co.,* 634 F.2d 1326 (10th Cir.1980) cited *Fireman's Fund* in upholding a district court's determination that the burden of proof be placed on the parties seeking to come within the protection of a policy, despite the fact that the declaratory judgment suit included third parties. The factual circumstances of the case are similar to those in the present case. In *Dairyland,* the defendant was the insurance company for a motorcyclist killed in an accident with the driver of a car owned by the plaintiff insurance company's insured. The issue in the declaratory judgment action was whether the driver of the car had the permission of the insured or not. The Tenth Circuit found that the burden of establishing coverage under an insurance policy is on those who wish to come within the coverage of the policy. The court's search has turned up no contrary authority.[2] *See Barker v. Goldberg,* 705 F.Supp. 102 (E.D.N.Y.1989).

Defendants contend that Pennsylvania courts have resolved the question of the burden of proof in a situation where the sole issue to be decided is whether a person resides in a certain household. However, the cases cited by defendants—*Greenwood v. Hildebrand,* 357 Pa.Super. 253, 515 A.2d 963, 965 (1986) and *In re Estate of McKinley,* 461 Pa. 731, 337 A.2d 851 (1975)—are inapposite because they do not involve declaratory judgment actions involving the interpretation of the scope of insurance coverage. *Fireman's Fund* is much more on point and these cases do nothing to

shake the court's reliance on it.[3] Moreover, both these cases involved the concept of domicile, that is, the place where one has voluntarily fixed his habitation along with an intention to stay there for the indefinite future. The concept involved in the present case is one of residence, a separate and distinct concept which does not take into account the intention of the person involved. *See Amica Mutual Insurance Co. v. Donegal Mutual Insurance Co.,* 376 Pa.Super. 109, 545 A.2d 343 (1988).

Defendants' next argument attacks the burden decision because, they argue, Allstate is attempting to defend against coverage due to limitations, exceptions or exclusions in the policies, and, in such a circumstance, the burden has always been placed on the insurer. Defendants cite *Daburlos v. Commercial Ins. Co.,* 521 F.2d 18 (3d Cir.1975), which states:

> [T]he insurer in Pennsylvania must, when *invoking* an *exclusionary provision* to defend against coverage, bear the burden of proving that the exclusionary provision is applicable to that particular case.

521 F.2d at 24 (emphasis added). The *exclusionary* provision in *Daburlos,* which involved a clause in a flight insurance policy which provided for coverage only if certain prerequisites were met. Around the clause were references to the policy being "limited" and to the "delimitation" of coverage. In contrast, the clauses at issue here set out *permissive* grounds for coverage. The policy provides "Allstate will pay damages an insured person is legally obliged to pay." Insurance Policy at 4. It

---

**2.** The court is aware of an unpublished opinion by Judge Ludwig of the Eastern District of Pennsylvania in which he refuses to switch the burden of proof to defendants. *Nationwide Mutual Ins. Co. v. Diehl,* 768 F.Supp. 140 (E.D.Pa. 1990). The court finds Judge Ludwig's decision distinguishable for two reasons. First, in footnote 3, the *Diehl* court stresses that the issue did not come up until it was raised *sua sponte* after trial. The court cites cases which indicate that by not raising the issue at the appropriate time, plaintiff had essentially waived his right to pursue the issue. Second, Judge Ludwig does not even address *Fireman's Fund,* a case which must at least be distinguished in determining the burden in such a circumstance.

**3.** The court also finds it troubling that defendants simply assume that it is plaintiff asserting that Potter changed his residence from his parents' household. However, there was a plethora of evidence produced at trial—documents such as a driver's license and work forms as well as testimony from family members—that Potter had moved out eight months prior to the accident. Defendants then attempted to introduce evidence in the form of prior inconsistent statements by family members which would show that Potter had moved back in with his family a week or two before the accident. This being the case, is it not defendants then who are attempting to show a change in residence?

further defines "insured persons" as including "any resident relative" as well as the insureds. These are terms which simply set out who is covered by the policy as a rule, not the conditions under which a person normally covered by the policy will not be covered. Therefore, arguments which party bears the burden of proof in situations where an exclusionary clause is at issue are irrelevant here. The court then correctly assigned the burden of proof prior to trial.

## II. Propriety of Directed Verdict

### A. Admission of Prior Inconsistencies

■ At trial, defendants called Kenneth Bair and Doris Bair, Frank Potter's mother and stepfather, to the stand. They testified that Potter was living away from the parents at the time of the accident. Defendants then attempted to impeach this testimony through two sources. First, they called Kenneth Mutzabaugh, brother-in-law of one of the decedents, who reported a prior inconsistent statement made by Mr. Bair. Second, they introduced certain statements given by Mrs. Bair to an Allstate insurance investigator soon after the accident which were apparently at odds with the testimony she gave on the stand.

Defendants now argue that the court, in deciding whether or not to grant a directed verdict, had improperly refused to consider these statements, which were obviously hearsay, as substantive evidence pursuant to the residual hearsay exception of Federal Rules of Evidence, Rule 803(24).

The court refused to consider these statements for anything more than their impeachment value because defendants had waived their ability to have them admitted as such. At the pretrial conference, counsel for defendants explicitly stated that they would not attempt to portray the prior statements as substantive evidence at trial, and would merely use them to impeach. Then, as the testimony unfolded, defendants made no attempt to argue to the court that the statements should be considered on their own merits by the jury. They were portrayed solely as impeachment devices. Only when defendants were on the brink of having a verdict directed against them, after they had closed their case, did they then contend that the prior inconsistencies should be considered by the court on a substantive basis.

■ A trial judge has broad discretion to prohibit parties from raising matters which they have failed to pursue in pretrial proceedings. *Sample v. Diecks*, 885 F.2d 1099, 1106 (3d Cir.1989). This is true regardless of whether a pretrial order issues. *Price v. Inland Oil Co.*, 646 F.2d 90, 96 (3d Cir.1981). If a judge has wide latitude in delimiting parties to the issues that were discussed pretrial, then it is only logical that that discretion is even broader when a party expressly waives an argument prior to trial, proceeds through trial with the court and the opposition assuming that these are the ground rules, and then drops the bomb by trying to make the waived argument in the eleventh hour. Defendants had months to consider the nature of the prior inconsistent statements and the legal arguments that they might make to direct the statements outside the scope of the hearsay rule, but put off making any such argument until after plaintiff had committed itself to a strategy in defending the inconsistencies during plaintiff's exposure of the case.[4] The court was well within its discretion in ruling that defendants had waived their right to pursue the admission of the inconsistencies as substantive evidence. No legal error was committed.

### B. Sufficiency of Evidence

#### 1. "Resident Relative"

■ Similarly, the court was correct in directing a verdict against defendants at

---

4. The court should point out to counsel for Mrs. Sprout that the court never ruled on the admissability of the statements under any hearsay exception as they imply at pages 12 and 13 of their brief in support of a new trial ("[i]n the event that the court again rules that the prior statements are hearsay and not within the scope of Rule 801(d)(1) ...") ("[i]n failing to admit the statements ..."). The court only ruled that the statements could not be used as substantive evidence because that tack had been waived.

the close of their case. Defendants could offer little substantive evidence to support their contention that Frank Potter was living at the home of his parents at the time of the accident, and that which they did offer was clearly insufficient to justify allowing a jury to meditate on it.

A directed verdict is proper where, as a matter of law, the party with the burden of proof fails to present a case for the jury. *Garnett v. Kepner*, 541 F.Supp. 241, 243 (M.D.Pa.1982). This is so when all the evidence points one way and is susceptible to no reasonable inferences supporting the allegations of the non-moving party. *Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245, 1248 (8th Cir.1987).

■ In directing the verdict against defendant, the court did not weigh the credibility of the evidence, but simply looked at the admissible evidence presented by defendants at trial and ruled that they had not produced a sufficient quantum to allow a jury to rule in their favor. At most, the introduction of the inconsistent statements of Mr. and Mrs. Bair assaulted their credibility. However, the inconsistent statements could not be used to prove that Potter resided with his parents: Testimony of witnesses, though diminished in credibility, cannot be used to sustain the position of party if it directly contradicts that position.

In *Dyer v. MacDougall*, 201 F.2d 265 (2d Cir.1952), the Second Circuit Court of Appeals was faced with a plaintiff who claimed he had been slandered but could only prove the existence of the slander through the testimony of two witnesses, both of whom testified at trial that no slander occurred. The court held that if that was the plaintiff's case, a directed verdict must issue. Learned Hand wrote for the court:

> Hence, if the cause went to trial, the plaintiff would have no witnesses by whom he could prove the slanders alleged in the third and fourth counts, except the two defendants, Almirall and Mrs. Hope; and they would all deny that the slanders had been uttered. On such a showing how could he escape a directed

verdict? It is true, that the carriage, behavior, bearing, manner and appearance of a witness—in short, his "demeanor"—is a part of the evidence. The words used are by no means all that we rely on in making up our minds about the truth of a question that arises in our ordinary affairs, and it is abundantly settled that a jury is as little confined by them as we are.... [I]n strict theory a party having the affirmative might succeed in convincing a jury of the truth of his allegations in spite of the fact that all the witnesses denied them, we think it plain that a verdict would nevertheless have to be directed against him.

*Dyer*, 201 F.2d at 268–69.

Therefore, ignoring the testimony of the Bairs, defendants could offer virtually no hard evidence that Frank Potter was living with his parents at the time of the accident. There was some testimony that Potter had left a few odds and ends at his parents when he had moved. The brother-in-law of one of the decedents, Potter's girlfriend Nicole Sprout, stated that Potter had stayed at his home a night or two before the accident and said at that time that he lived in "Marysville." These vague assertions are clearly not sufficient to support a reasonable inference that Potter lived in the home of his parents.

■ Importantly, even if the court had permitted defendants to reopen their case and have the prior inconsistent statements considered as substantive evidence it could not have allowed the case to go to the jury. A party with the burden of proof cannot prevail if the evidence presented during his case is so uncertain, inadequate, equivocal, ambiguous or contradictory so as to make any finding based on that evidence pure guesswork. *Bohner v. Eastern Express, Inc.*, 405 Pa. 463, 175 A.2d 864 (1961); *Novaselec v. Workmen's Compensation Appeal Bd.*, 16 Pa.Commw. 550, 332 A.2d 581 (1975). In the present case, there was no direct testimony that Potter was a resident of his parents' household. There was testimony by the Bairs and Potter himself that he was not. Thus if a jury were permitted to consider the inconsistent ver-

sion, the jury would simply have to guess which version of the facts was correct. This would not be sufficient to avoid a directed verdict.

### 2. "Unmarried Dependent Child"

Defendants assert that they had adduced sufficient evidence at trial for a jury to reasonably conclude that he was an unmarried dependent child within the meaning of the clause in the insurance contract. The clause in the insurance policy states that an unmarried dependent child would be considered a resident relative "while temporarily away from home ... if they intend to resume residing in your household." Policy at 4. In any event, the clause is obviously intended to cover children who are periodically temporarily away from home, but who return as a regular matter. Here, defendants argue that since Potter had moved out of his parents' home twice before, and was welcome back any time, that he was a "dependent" temporarily away from home. Defendants assertions are not in line with the evidence brought out at trial.

First, Potter was not a "dependent." After he left home, he was independently employed. He had paid rent to his sister, and then to the Stardust Motel. The only reason he checked out of the Stardust was that it had been sold out in advance and had no rooms available. There was absolutely no testimony that his parents provided him with meals or other services during his last period away, and in fact, he had only visited his parents' house on one occasion—Christmas—after he had left in August 1989.

Second, there was no indication at trial that Potter's absence was temporary. Of his personal belongings, he had left only bric-a-brac at his parents'. Potter clearly stated that he had no intention of returning home. The only indication that Potter might have only temporarily left home was that he had moved out on two other occasions, then returned. One of these periods away, however, was for a period of several weeks when Potter was still in high school, and he returned home to begin the new

school year. The final time he moved out, Potter was older than 18 and had dropped out of high school. It would torture logic to conclude that because a young man had moved out once while still in school, returned for a period, and then moved out again clearly stating that he had no intention to return, he was only temporarily away from his parents home.

The court is satisfied that Potter was not a dependent child temporarily away from home for the purposes of coverage under the policy.

### III. Ambiguity of the Policy

Defendants argue that because the court refused to declare the policy drafted by plaintiff ambiguous at trial, the court committed an error of law. Plaintiff's policy defines "resident" as "one who physically resides in your household with the intention of continuing residence there" Policy at 4. Defendants contend that the policy is ambiguous because it confuses the concept of residence with the concept of domicile.

In Pennsylvania, when the language of an insurance policy is ambiguous, obscure, uncertain or susceptible to more than one construction, courts will construe the language most strongly against the drafter of the policy—the insurer. *D'Allesandro v. Durham Life Ins. Co.*, 503 Pa. 33, 467 A.2d 1303 (1983). A policy provision is ambiguous if reasonably intelligent persons would differ over its meaning given its context in the whole of the contract. *Adelman v. State Farm Mutual Automobile Ins. Co.*, 255 Pa.Super. 116, 386 A.2d 535 (1978). However, the language of a policy should not be tortured to inject ambiguity into a contract where none is present. *Houghton v. American Guaranty Life Ins. Co.*, 692 F.2d 289 (3d Cir. 1982). Further, if the language is clear, a court should not interpret that language to mean other than what it says. *Guardian Life Insurance Co. v. Zerance*, 505 Pa. 345, 479 A.2d 949 (1984).

The meaning of "resident" seems to the court to be abundantly clear to anyone who would read the policy, regardless of its meaning as a term of art as recently de-

fined by the Pennsylvania Superior Court in *Amica Mutual Insurance Co. v. Donegal Mutual Insurance Co.,* 376 Pa.Super. 109, 545 A.2d 343 (1988). It would be plain to anyone reading the policy that to be covered a person must actually live in the household and must not just be passing through. There is no ambiguity present in the policy as regards the term "resident."

## IV. Testimony of Reasonable Expectation of the Parties

■ Defendants argue that the court committed reversible error by refusing to permit testimony regarding the reasonable expectations of the parties in interpreting the scope of the limitations of the policy— that is, regarding who is a "resident relative" under the policy. The court should have, assert defendants, required plaintiff to have proffered testimony as to whether the so-called "limiting" language was explained to the Bairs.

Defendants rely on the case *Hionis v. Northern Mutual Ins. Co.,* 230 Pa.Super. 511, 327 A.2d 363 (1974), which they cite as requiring an insurer to show that where a dispute arises over the interpretation of a term of exclusion, it is up to the insurer to show that the exclusion was explained to the insured or that he was aware of it. *Hionis,* 327 A.2d at 365. Defendants then state that *Hionis* was followed as the rule of law in *Tonkovic v. State Farm Mutual Auto. Ins. Co.,* 513 Pa. 445, 521 A.2d 920 (1987).

However, *Hionis* was overruled in part by *Standard Venetian Blind v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563 (1983). In *Venetian Blind,* the Pennsylvania Supreme Court stated that, to the extent a policy's language is clear and unambiguous, the insured person may not avoid any coverage limitation under the policy by stating later that he did not read or understand the limitation. *Venetian Blind,* 469 A.2d at 567. *See Tonkovic,* 521 A.2d at 924–25. Here, the court has already held the "resident relative" language to be unambiguous. The insureds, the Bairs, are not disputing the scope of coverage claimed by the plaintiff. Defendants are essential-

ly trying to cloud a clear issue through the introduction of irrelevant testimony. The court can determine as a legal matter the scope of coverage. The facts as presented at trial may show if a person was within that scope. Here, the facts did not.